[Crim. No. 346. Department One.—February 17, 1898.]

## THE PEOPLE, Respondent, *v.* CARL W. VON TIEDEMAN, Appellant.

CRIMINAL LAW—PERJURY—MATERIALITY OF EVIDENCE TO ISSUE—SUFFICIENCY OF INDICTMENT.—Where an indictment for perjury substantially alleges that the nature of the issue in an action pending was such that it became and was material to know whether or not a certain photograph therein exhibited to the defendant, who was called as a witness therein, was a photograph of a woman who represented herself to the defendant as bearing a certain name, and that the defendant feloniously swore that it was such photograph, it can be said as matter of law that the evidence was material to the issue.

ID.—MATTERS CIRCUMSTANTIALLY TENDING TO PROVE ISSUE.—Matters which circumstantially tend to prove the issue are deemed material, and any evidence tending in a material degree to strengthen the case of a party to an action, is material to the issue.

ID.—CONSTRUCTION OF PENAL CODE—UNQUALIFIED STATEMENT NOT KNOWN TO
BE TRUE—CONSCIOUSNESS OF WANT OF KNOWLEDGE—WILLFUL ELEMENT
ESSENTIAL TO CRIME.—Section 125 of the Penal Code, which declares that
"an unqualified statement of that which one does not know to be true
is equivalent to a statement of that which he knows to be false," is
not intended to define the crime of perjury, but must be read in con-
nection with section 118 of that code defining the crime, and, so read,
is designed to include cases where a witness willfully testifies to
matters of which he knows that he has no knowledge. The "willful"
element in the testimony is as essential to the crime of perjury in
the case of an unqualified statement of that which one does not know
to be true as in the case of a statement which one knows to be false.

ID.—ERRONEOUS INSTRUCTION—UNQUALIFIED METHOD OF TESTIMONY—CRIMINAL
INTENT IGNORED.—An instruction which based criminality solely upon
the distinction as to the method of the testimony as being qualified
by the belief of the witness, or unqualified in form of statement,
and charged in effect, that if the defendant unqualifiedly stated
falsely that the picture referred to by him was the picture of the
woman in question, instead of saying that he thought so, or believed
it to be so, when he did know that it was, he committed the crime of
perjury, thereby eliminating the question of criminal intent wholly
from a statement made in the unqualified form, is prejudicially erron-
eous.

ID.—HONEST MISTAKE NOT PERJURY—RECKLESS DISREGARD OF TRUTH WITH-
OUT BELIEF OF FALSEHOOD.—There can be no willful crime of perjury,
where the witness is honestly mistaken in his testimony, or the oath
is according to the belief and conviction of the witness as to its
truth; and it seems that even a reckless disregard of truth by a wit-
ness, who has no belief that he is swearing falsely, is not perjury,
though his testimony is in fact false, and he would have made it true
if he had used caution.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco, and from an order denying a
new trial. William T. Wallace, Judge.

The facts are stated in the opinion of the court.

George D. Collins, for Appellant.

W. F. Fitzgerald, Attorney General, and Charles H. Jackson,
Deputy Attorney General, for Respondent.

GAROUTTE, J.—The defendant has been convicted of the
crime of perjury, and appeals to this court. The present prose-
cution was occasioned by the following circumstances: Defend-
ant was upon trial charged with the crime of having knowingly
offered to be filed for record and registration in the recorder's

office of the city and county of San Francisco a forged deed, purporting to be a deed of conveyance of a certain described block of land by one Harriet P. Christy, grantor, to one Horace George Pratt, grantee. In that trial defendant admitted that he participated in certain transactions pertaining to this deed, stated that he believed it to be genuine, and that an imposition had been practiced upon him in the matter by a certain woman, who represented herself to be Harriet P. Christy, the real owner of the land. He further stated that she had introduced herself to him as Harriet P. Christy; that he had seen her subsequently at various times, and always supposed that she was Harriet P. Christy. Hence, it may be said that the material question there was, Did the defendant believe this woman was in truth Harriet P. Christy? At the trial of that case defendant took the stand and testified to the foregoing facts. He also testified that his first meeting with this woman took place February 16, 1894. In giving his evidence as to these particular matters he was asked by counsel:

"Q. Is that the same Mrs. Christy whose picture has been produced here, that you met on the 16th of February? A. Certainly." This question and this answer form the basis of the charge of perjury upon which defendant has now been convicted.

1. The allegations of the indictment to be here considered are substantially as follows; A certain action was pending and on trial in Department 11 of the superior court; that it then and there became and was material to know whether or not a certain photograph of Mrs. Sarah R. Owen, which photograph was then and there shown to the said Carl W. Von Tiedeman, was and is the photograph of the woman who represented herself to the said Carl W. Von Tiedeman as Mrs. Harriet P. Christy; that Carl Von Tiedeman was called as a witness in said action, and being then and there shown a photograph of one Mrs. Sarah R. Owen, did feloniously swear and take oath that the said photograph was and is the photograph of the woman who had introduced herself to him as Harriet P. Christy on the sixteenth day of February, A. D. 1894.

Various objections are taken to the sufficiency of the indictment, but many of them are technical in the extreme, and are

not at all convincing when considered in the light of the liberal rules of pleading declared by the Penal Code of this state. The complaint is made that the pleading does not aver that the testimony given by Von Tiedeman was material to the issues. It appears to us that the pleading in substance states just those facts. Its sufficiency certainly has full support in *People v. Ah Bean,* 77 Cal. 12. As there said, two modes are recognized by which the materiality of the alleged false statements may be shown in a pleading charging perjury: "1. By setting forth the nature of the issue and the evidence given thereon, so that as a matter of law it may be said the testimony upon which the perjury is assigned is material to the issue; 2. By showing an action at issue in a court of competent jurisdiction, the testimony given, its willful and felonious falsity, coupled with the averment that it was material to the issue." In this indictment it is substantially alleged that the nature of the issue was whether or not a certain photograph was a photograph of the woman who represented herself to Von Tiedeman as Mrs. Harriet P. Christy. Von Tiedeman gave direct evidence upon this issue. Hence, as matter of law, it can be said that the evidence was material.

Appellant insists that the evidence is insufficient to support the verdict. The contention in this regard as to many points goes to technical nonessentials, and we pass them by. He insists that the evidence upon which the perjury charge is predicated is not material to the issues raised in the action. This claim cannot be supported. Matters which circumstantially tend to prove the issue are deemed material. Defendant testified that he had been imposed upon by a certain woman. He went further and identified this woman by a photograph. The case stands the same as though he had given the name and address of the woman, and such statements had been proven to be false. His evidence as to the photograph tended in a material degree to strengthen his case. Such being the fact, it was competent, relevant, and material evidence.

We have examined with care the charge of the court to the jury, in view of the exceptions taken to it. Many of the exceptions which appellant makes are entirely too technical to interfere with the substantial and practical administration of

justice.   In some respects the charge is probably too favorable
to defendant, as where the court instructs the jury as matter of
law that Fiddler was an accomplice of the defendant, and that
his evidence should be weighed in view of that fact.   But in one
particular the learned judge of the trial court has misconstrued
or misapplied the law, and we deem the error a most substantial
and prejudicial one to defendant's rights.   The principle de-
clared by the court is found running throughout the charge,
and arises from a construction given section 125 of the Penal
Code, found in the chapter bearing upon the crime of perjury.
That section has never been construed in this state, and we are
not prepared to say that under the facts of this case, giving it
the proper construction, it is at all applicable.   Again, it may
at least be said to be doubtful whether or not, under the ordinary
indictment for perjury that we have here, evidence would be
admissible to prove the exceptional kind or class of perjury con-
templated by section 125.   It has been expressly held, that an
indictment charging the particular facts covered by that sec-
tion should be framed in order to justify a prosecution under
it.   (28 Tex. Ct. App. 334.)   It may also be suggested that in
*People v. McKinley*, 3 Park. C. R. 510, a contrary view is taken.

By section 118 of the Penal Code perjury is defined as follows:
"Every person who, having taken an oath that he will testify,
declare, depose, or certify truly before any competent tribunal,
officer, or person in any of the cases in which such an oath may
by law be administered, willfully and contrary to such oath
states as true any material matter which he knows to be false,
is guilty of perjury."   Section 125 declares: "An unqualified
statement of that which one does not know to be true is equiva-
lent to a statement of that which he knows to be false."   This
section of the code was given to the jury, and the application
of the principle there declared to the facts of the case stated in
various forms by the judge in his charge.   These statements may
be fairly illustrated by the following examples: "Now, was this
question asked, and was his answer so given as here stated?   If
they were, this amounted to an unqualified statement by Von
Tiedeman as a witness that that picture produced on that trial
was a picture of the woman with whom he had dealt as Mrs.
Harriet P. Christy; it was not a statement by him that he, Von

Tiedeman, thought or believed it to be such, or had been informed that it was a picture of that woman, but it was an unqualified statement that it was a picture of that woman. Now, if you find that the question and answer were as above stated, the next inquiry is, Was it in fact a picture of that woman? If it was not, and the defendant testified unqualifiedly that it was, he thereby made an unqualified statement as a witness of a matter as absolutely true which he did not know to be true, and to make such a statement as that is so far forth to commit the crime of perjury." In another portion of the charge the judge declared: "If the picture referred to by Von Tiedeman was not the picture of the woman who imposed upon him, the defendant could not know that it was, and, if not knowing that it was, he stated 'certainly' that it was—stated positively and unqualifiedly that it was, he thereby committed the crime of perjury the same as though he had willfully testified that something was true which he knew at the time to be false." Again, the judge tells the jury: "I hope you understand this, gentlemen. I am but reading to you the statute upon this subject. There is a vast difference between a statement made by a witness that he thinks, believes, supposes, or is informed that a particular thing is so, and a positive statement made by him that it is so—an unqualified statement that it is so." Again, the judge tells the jury: "A witness may state in a court of justice that he thinks a certain thing is so, that he believes it is so, perhaps that he is informed that it is so—and of course it is no perjury if he had been so informed, or does believe it or supposes it to be so; but, if a witness undertakes to state, and does state positively and unqualifiedly that a material thing is so, when it is not so, he is necessarily giving false testimony, because he states that he knows something he does not know. The distinction consists in the method of testifying, in the character of the testimony given." Again: "Further, if he unqualifiedly testified falsely that the picture there referred to by him was the picture of the woman in question, when he did not know that it was, in that case he committed the crime of perjury." Again, the judge tells the jury: "Now, if he swore in that case positively and unqualifiedly that it was, when in fact it was not, the picture of the woman he met, that is the

crime of perjury committed, because he thereby swore in effect that he knew that to be what he could not have known it to be. One may believe that which is not so; he may suppose that which is not so; but he cannot know that which is not so in fact."

Such construction of section 125 absolutely eliminates the whole question of criminal intent; and criminal intent is the vital element in every crime of perjury. Under the charge as given, a person with the most honest intentions could be convicted. A man honestly mistaken could be guilty of the crime. Under these instructions the jury were, in effect, told to convict the defendant, even though they were fully convinced that he honestly thought and believed that the photograph was that of the woman with whom he had the dealings. A witness who without qualification testified that John Smith was at a designated point upon last Saturday night would not be guilty of perjury if he was honestly mistaken as to the fact. Yet this charge of the court would justify his conviction. The witness may have seen John Smith at the place Sunday night, and thus have been misled as to the time; or it may have been John Jones who was at that point at the particular time, and the witness was honestly mistaken in the identity of Smith. Yet, if he was honest in his statement, if he fully believed that he was telling the truth when he made the statement, certainly he committed no perjury. It is not the purpose of the law to send such men to the prisons of the state, and this section was not framed to deal with that class of persons.

Section 125 does not in itself define the crime of perjury, but is merely supplemental to the provisions of section 118, and is to be read in connection therewith in order to determine whether the acts therein specified constitute perjury. The legislature only intended by this section to declare that when one makes an unqualified statement of a fact as true which he does not know to be true, under circumstances in which a statement by him of a fact as true which he knows to be false would constitute perjury, such unqualified statement will itself constitute perjury. Reading the two sections together for the purpose of ascertaining the conditions under which the legislature has declared that "an unqualified statement of that which one

does not know to be true" will constitute perjury, section 118 will read as follows:

"Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person in any of the cases in which such oath may by law be administered, willfully and contrary to such oath makes an unqualified statement of that which he does not know to be true, is guilty of perjury." Before the person thus charged can be convicted of perjury, it must be shown that he made such statement "willfully"—that is, with the consciousness that he did not know that it was true, and with the intent that it should be received as a statement of what was true in fact. The word "willfully" implies "a purpose or willingness to commit the act." (Pen. Code, sec. 7.) "To do a thing willfully is to do it by design, with set purpose." (*People v. Sheldon*, 68 Cal. 434. See, also, the word "Willful" and notes thereto in 29 Am. & Eng. Ency. of Law, 113.) If the defendant had been charged with perjury for stating in his testimony that which he knew to be false, it would have been necessary, under the definition of the crime of perjury, for the jury to find that such statement was made by him "willfully," in order to convict him of the crime; but the "willful" element in his testimony is quite as essential to the crime in the case of an unqualified statement of that which one does not know to be true, as in the case of a statement of that which one knows to be false. The court omitted to instruct the jury that this was an essential element of the crime; that, in order to find the defendant guilty of the crime charged, they must find that the statement which he was charged with having made was made by him "willfully." The jury were told by the court in several forms of instruction that, if they should find that the defendant in his testimony upon the trial of the former action had made the unqualified statement that the photograph then produced in court was that of the woman who had represented herself to him as Mrs. Christy, and should also find that it was not in fact a photograph of that woman, the crime of perjury was established; but they were not instructed that they must also find that such statement was "willfully" made by the defendant. As already suggested, under the instructions given, the jury were at liberty to find the de-

fendant guilty, even though they should find that the statement had been made by him in the honest belief that it was true.

It is declared an elementary principle in Wharton's Criminal Law, section 1245: "The offense consists in swearing falsely and corruptly without probable cause of belief; not in swearing rashly or inconsiderately according to belief. The false oath, if taken from inadvertence or mistake, cannot amount to the voluntary and corrupt perjury." Again, in section 1250 it is said: "But, if there be no evil intent generally or specially, perjury fails. Thus, it is not perjury to swear honestly to testimony which the witness believes to be true, though a little diligence would have enabled him to have discovered its falsity." Section 125 of the Code is designed to include those cases where a witness testifies to matters when he knows that he has no knowledge upon the matters as to which he gives testimony, or, as put by some law-writers, he testifies to matters of which he knows himself to be ignorant. The criminality in such cases is found in the fact that the witness absolutely knows when giving his testimony that he does not know anything about the matter to which he is testifying. His knowledge of this fact makes his testimony false and corrupt, and the law declares him guilty of the crime of perjury. And he is equally guilty though this evidence should happen incidentally to be true. There is an early case which goes to the length of holding that a defendant may be convicted of the crime of perjury, even though he believes his testimony to be true. (*Commonwealth v. Cornish,* 6 Binn. 249.) But in the case of *United States v. Shellmire,* Bald. 370, it is said: "The statute of 5 Elizabeth . . . . adopted in Pennsylvania . . . . makes it of the essence of the offense of perjury that it be committed willfully and corruptly. Such are the very words of the law, which in our minds are not and cannot be taken as synonymous with rashly and inconsiderately swearing as the belief of the witness prompts him. His negligence or carelessness in coming to that belief or conclusion of the mind, without taking proper pains to enable him to ascertain the truth of the facts to which he swears, does not make his oath corrupt; and perjury cannot be willful where the oath is according to the belief and conviction of the witness as to its truth. It could not be asserted consistently with any legal

principle that an indictment for willful and corrupt perjury could be sustained by proof of a witness having sworn rashly and inconsiderately to what he believed to be true. The case in 6 Binney is supported by only one decision, and that in the star chamber." In section 1048 of Bishop's New Criminal Law it is said: "Perjury cannot be willful where the oath is according to the belief and conviction of the witness as to its truth; reckless disregard of truth by a witness who has no belief that he is swearing falsely is not perjury, though his testimony is in fact false, and he would have made it true if he had used caution."

For the foregoing reasons the judgment and order are reversed, and the cause remanded for a new trial.

Harrison, J., and Van Fleet, J., concurred.

Hearing in Bank denied.