[Criminal No. 456.   Filed.March 1, 1919.]

[178 Pac. 782.]

## ISAAC AYERS, Appellant, v. STATE, Appellee.

1. PERJURY—KNOWLEDGE OF FALSITY.—Defendant was not guilty of perjury under Penal Code of Arizona of 1913, sections 111, 119, if he honestly believed that signatures to recall petition, to genuineness of which he was swearing, were genuine, unqualified statement of that which one does not know to be true not being equivalent to statement of that which one knows to be false.

2. CRIMINAL LAW — PERJURY — EVIDENCE — CRITICISM BY COURT.—In prosecution for perjury in verifying genuineness of signatures on recall petition, defendant should have been permitted to state belief as to genuineness of signatures, uninfluenced by any adverse decision or criticism of court, and if he chose should have been permitted to state circumstances inducing belief.

3. PERJURY—GENUINENESS OF SIGNATURES TO RECALL PETITION—QUESTION FOR JURY.—In prosecution for perjury in verifying genuineness of signatures to recall petition, question of good faith of defendant in swearing that a particular signature was genuine was of fact for the jury.

4. PERJURY—GENUINENESS OF SIGNATURES TO RECALL PETITION—QUESTION FOR JURY.—In prosecution for perjury in verifying genuineness of signatures to recall petition, if there was any evidence tending to show defendant believed a particular signature was genuine, it was error to deprive him of right to have it passed on by jury.

5. CRIMINAL LAW—HARMLESS ERROR—EVIDENCE.—In prosecution for perjury in verifying genuineness of signatures to recall petition, failure to permit defendant to state with court's approval that his honest belief was that a particular signature was genuine, *held* harmless to defendant, where he admitted he knew it was not genuine and that he swore it was.

6. CRIMINAL LAW—INSTRUCTION.—In prosecution for perjury in verifying genuineness of signatures to recall petition, error in instruction that unqualified statement of that which one does not know to be true is equivalent of statement of that which one knows to be false, *held* harmless to defendant, in view of the court's proper definition of perjury.

[As to assignment of perjury, see note in 124 **Am. St. Rep.** 671.]

APPEAL from a judgment of the Superior Court of the county of Pima.   W. A. O'Connor, Judge.   Affirmed.

Mr. R. W. Langworthy and Mr. John T. Hughes, for Appellant.

Mr. Wiley E. Jones, Attorney General, for the State.

ROSS, J.—Appellant, who was convicted of the crime of perjury, prosecutes this appeal from the judgment of conviction and from an order overruling his motion for a new trial. The evidence shows that he was handed a recall petition asking for the recall of Supervisor J. W. Estill of Pima county, with the request that he circulate it for signatures. In time he returned the petition to the manager of the recall with some thirty-three signatures. The verification of the petition was before a notary public, and was in the following words:

"Isaac Ayers, being first duly sworn, deposes and says that he circulated the foregoing recall petition; that as such he knows the contents thereof, and that the signatures thereon are genuine."

The specific false swearing charged in the information was as to the signature of one Otto Williams. A number of the signatures were not genuine, one of the persons purporting to have signed it having been dead some 16 years.

Defendant testified in his own behalf that he did not secure all the names on the petition, but that he gave it to one Rogers to circulate, and when it was returned to him it contained Otto Williams' name, as also all the other fictitious and forged names. Of Williams' signature he said:

"I know it is not Otto's signature because I brought it in question when I saw it and asked it be taken off."

The name was not taken off, and it does not appear he examined the petition before signing and swearing to it to determine if the name was still there or had been erased. In his direct examination he also said:

"Q. Did you believe those signatures were all genuine when you took that oath? A. Yes, sir."

After the witness had answered the above question the prosecution objected that his belief was immaterial for the reason that section 119, Penal Code, provides:

"An unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false." It is perjury in either event.

The court sustained the objection, but did not strike the answer.

The court instructed the jury:

"I further instruct you, gentlemen of the jury, that the unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false."

The holding of the court that the belief of the defendant was immaterial, and the ruling thereon, and the giving of the above instruction, are assigned as errors. There are a number of other assignments based upon the ruling of the court in the admission and rejection of evidence and upon offers of evidence by the appellant, but, in view of the admitted facts, we do not consider them well taken.

Our perjury statute is a rescript of the California statute on that subject, sections 111 and 119, Penal Code of 1913, being the same as sections 118 and 125 of the California Penal Code.

In *People* v. *Von Tiedeman,* 120 Cal. 128, 52 Pac. 155, the California sections were construed. It was there held that there could be no perjury without a wilful intent, and that the two sections should be construed together, as follows:

"Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person in any of the cases in which such oath may by law be administered, wilfully and contrary to such oath makes an unqualified statement of that which he does not know to be true, is guilty of perjury."

And it was further said:

"Before the person thus charged can be convicted of perjury, it must be shown that he made such statement 'wilfully'—that is, with the consciousness that he did not know that it was true, and with the intent that it should be received as a statement of what was true in fact. The word 'wilfully' implies 'a purpose of willingness to commit the act.' Penal Code, § 7."

One who swears to a falsehood through an honest mistake, or who rashly or inconsiderately swears to something that is not true, if he honestly believes it to be true, is not guilty of perjury. Wharton on Criminal Law, § 1245; Bishop on New Criminal Law, § 1048; *People* v. *Von Tiedeman, supra; Pilgrim* v. *State,* 3 Okl. Cr. 49, 104 Pac. 383.

In *Ryan* v. *Territory,* 12 Ariz. 208, 100 Pac. 770, the rule is stated:

"When intent is material, the jury is authorized to infer it from the circumstances connected with the act; and, while there are some authorities which hold, with the trial court, that the intent of the accused is to be inferred only from the facts and circumstances surrounding the commission of the act, we think the better rule is that the defendant is entitled, where intent or belief or motive is material, to testify directly what his intent, belief, or motive was at the time he committed the act."

The appellant should have been permitted to state his belief as to the genuineness of the signatures on the petition, uninfluenced by any adverse decision or criticism of the court, and, if he chose, he should have been permitted to state the circumstances that induced his belief. The question of the good faith of appellant in swearing that Williams' signature was genuine was one of fact to be submitted to the jury. If there was any evidence tending to show that he believed the signature was genuine, it was error to deprive him of the right to have it passed upon by the jury. We have nothing, however, but his assertion that he so believed. Contradicting that is his admission that he knew it was not Williams' signature, and also his admission that he swore it was his signature. He offered to prove that he relied upon Rogers, to whom he gave the petition to circulate, and that it was Rogers who placed or caused to be placed on the petition Williams' name. He also undertook to prove that he had asked the recall manager to take Williams' name off the petition, but the fact remains the name was not taken off and he swore it was genuine. His act was characterized by a bold and reckless indifference to consequences, for he knew what he was doing. He knew all the facts and circumstances; he knew the signature was not genuine. We think if he had been permitted to state with the court's approval that his honest belief was that the signature of Williams was genuine, in the circumstances, it would not have affected the verdict of the jury.

The instruction is likewise subject to criticism. The court, however, defined perjury in the language of the statute as contained in section 111. In that definition all the elements of perjury are to be found.

A late decision of the supreme court of California (*People* v. *Senegram,* 27 Cal. App. 301, 149 Pac. 786) holds that an instruction to the effect that " 'an unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false,' when taken in connection with an instruction defining perjury and stating that any person who, having taken an oath to testify truly, wilfully states as true any material matter which he knows to be false, is guilty of perjury, was not prejudicial to defendant.'' The situations are exactly the same.

We think, in view of the uncontradicted evidence, the errors committed by the court were not prejudicial to the appellant.

The judgment is affirmed.

CUNNINGHAM, C. J., and BAKER, J., concur.