[No. B186072. Second Dist., Div. Seven. Oct. 16, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN RUTTER, Defendant and Appellant.

**COUNSEL**

David H. Goodwin for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Mary Sanchez and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**JOHNSON, J.**—A jury convicted John Rutter of attempted grand theft, forgery and perjury. Rutter contends his forgery conviction should be reversed because the prosecution failed to disclose a piece of its evidence in a timely manner. He contends his perjury conviction should be reversed because the trial court erred in instructing the jury on the elements of the crime. We find no merit in these contentions and affirm the judgment.

## FACTS AND PROCEEDINGS BELOW

Before she was Princess Fiona, Mary Jensen or Charlie's Angel Natalie, Cameron Diaz was a 19-year-old model who on one occasion posed for Rutter, a well-known photographer. Rutter did not pay Diaz for her modeling but she received copies of the photographs to use in her portfolio. In some of the photographs Diaz appeared topless. Diaz never signed a release allowing Rutter to sell the photographs.

Eleven years later, just prior to the release of Charlie's Angels: Full Throttle (Columbia Pictures 2003), Rutter contacted Diaz and her representatives and offered to sell Diaz the pictures from her photo shoot for $3.5 million. Rutter claimed he had buyers willing to pay $5 million for the pictures. The buyers, he said, intended to publish the topless photographs to coincide with the release of the Charlie's Angels film and to portray Diaz as the "bad angel." When Diaz challenged Rutter's right to sell the photographs Rutter produced a release form which he asserted bore her signature.

Diaz maintained the signature on the release form was a forgery and filed a civil suit to enjoin Rutter from marketing the photographs. In the course of that lawsuit Rutter submitted a declaration under penalty of perjury stating "Ms. Diaz's signature on the model release is not a forgery or a phony as Ms. Diaz claims."

While acting as if she was negotiating with Rutter for the photographs Diaz contacted the police regarding Rutter's attempt to sell the photographs based on the forged release. Proceeding under a warrant, police searched Rutter's apartment and seized a desktop computer, a laptop computer, an external hard drive and a stack of CD-ROM's. Numerous copies of the photo

shoot release were found in the computers and on the CD-ROM's. Prosecution experts testified at trial Diaz's signature on the releases found in Rutter's computers and CD-ROM's had been forged.

After a jury convicted Rutter of attempted grand theft, forgery and perjury, he filed a timely appeal.

## DISCUSSION

### I. *THE RECORD DOES NOT SUPPORT RUTTER'S CONTENTION THE PROSECUTION FAILED TO TIMELY DISCLOSE ITS EXPERT'S OPINION REGARDING EVIDENCE OF FORGERY.*

Rutter's trial commenced on a Tuesday. On the preceding Thursday the prosecution's computer consultant gave the prosecutor a 113-page report summarizing the computer evidence which supported the charge Rutter forged Diaz's name on the photo shoot release. The prosecutor gave a copy of this report to Rutter's attorney the next day. At the start of trial the following Tuesday Rutter's attorney advised the trial court he had just completed reviewing the report and had learned for the first time the prosecution would seek to introduce expert testimony Rutter's laptop contained evidence the release had been forged.

Rutter moved to exclude any expert opinion testimony derived from the contents of the laptop on the ground prosecution's late disclosure of such testimony unfairly prejudiced his defense. Rutter did not contend the prosecution had acted in bad faith, and he conceded the prosecutor turned over the report "the minute he got it." He also acknowledged his own expert had access to and examined the same computers as the prosecution's expert. Rutter maintained, however, none of this was relevant. Prejudice did not arise from being denied access to the computers or to the report, he argued, but from being denied access to the expert's opinion the computer's hard drive showed evidence of the forgery. He explained that up until the time he reviewed the expert's report the prosecution's discovery disclosures led him to believe the only computer-related evidence of the alleged forgery was contained on the CD-ROM's seized from his apartment. Rutter intended to counter this evidence with evidence someone other than he placed the allegedly forged document on those disks. New evidence the forged document was found on Rutter's laptop undercut this defense because it tied the

forged model release directly to Rutter. Furthermore, Rutter argued, allowing this new evidence meant he would have to retain a computer expert to again review the contents of the laptop and assess the validity of the prosecution's expert's opinion based on those contents. Rutter specifically rejected a continuance in order to have time to prepare a response to the prosecution's new evidence. A continuance would "severely prejudice" him, Rutter contended, because it would deny him his right to a speedy trial. He noted both sides had answered ready for trial and the jury had already been selected.

In response the prosecutor argued the evidence at issue was not new. Rutter's defense team had been given unfettered access to the computers for two years before trial. It was not the prosecution's fault if Rutter's computer expert did not see or appreciate the significance of the contents of the laptop or did not draw the same conclusions from the evidence the prosecution's expert drew. Furthermore, the prosecution had advised Rutter's defense counsel three months before trial it reserved the right "to use any file items contained on the various drives and other media seized during execution of the search warrant in this case." Finally, the prosecutor told the court he had only recently been assigned to the case and had asked the computer expert to prepare the report in question so he would have a summary of the computer-related evidence for trial. He confirmed he gave a copy of the report to Rutter the day after he received it.

The trial court denied the motion to exclude the expert's testimony. The court ruled "we are not dealing here with new evidence, forensic or otherwise" and pointed out the defense had access to the hard drives and the ability to perform whatever forensic examinations it wished. For these reasons, the court concluded, "this isn't any surprise; isn't any ambush; isn't any violation of discovery."

On appeal Rutter argues the trial court erred in not excluding the prosecution expert's opinion, drawn from his examination of the laptop, because the prosecution did not turn over the expert's report of his examination until a few days before trial. This argument has no merit.

Rutter cites the first sentence of Penal Code section 1054.7[1] which states: "The disclosures required under this chapter shall be made at least 30 days prior to the trial, unless good cause is shown why a disclosure should be

---

[1] All statutory references are to the Penal Code.

denied, restricted, or deferred." But Rutter ignores the next sentence of section 1054.7 which states: "If the material and information becomes known to, or comes into the possession of, a party within 30 days of trial, disclosure shall be made immediately . . . ."

In this case it is undisputed the prosecution immediately turned over its expert's report to Rutter. Thus the prosecution satisfied section 1054.7 as to the computer expert's report. Nothing in the record suggests the prosecution learned of its expert's opinion based on the laptop evidence prior to receiving his written report. Thus, Rutter failed to establish a violation of section 1054.7 as to any statement by the expert prior to delivery of his report.[2]

## II. *THE TRIAL COURT ERRED IN INSTRUCTING THE JURY UNDER SECTION 125 BUT THE ERROR DOES NOT REQUIRE REVERSAL.*

The trial court's perjury instructions present a closer question.

The prosecution charged Rutter with perjury based on his declaration in the civil case brought by Diaz in which he stated: "Ms. Diaz's signature on the model release is not a forgery or a phony as Ms. Diaz claims."

The trial court correctly instructed the jury: "Every person who declares under penalty of perjury . . . and who willfully states as true any material matter which he knows to be false is guilty of the crime of perjury in violation of Penal Code section 118. . . . In order to prove this crime each of the following elements must be proved: 1. The defendant declared under penalty of perjury and willfully stated as true any matter which was false; . . . 3. The defendant *knew* the statement was false and was being made under penalty of perjury; . . . 5. In making the statement, the defendant had the *specific intent to declare falsely* under penalty of perjury." (Italics added.)

Using former CALJIC No. 7.22 the court next instructed the jury that under section 125: "An unqualified statement that something is true, when the

---

[2] Section 1054.1, subdivision (f) appears to require only the disclosure of an expert witness's "written or recorded" statement. In the present case there was no evidence of any expert statement, written, recorded or oral prior to the report in question.

person making the statement does not know whether it is true or not true, is equal to a knowing false statement."[3]

Following the section 125 instruction the court instructed: "Perjury requires that the statement be made willfully by a person who knows that the statement is being made under penalty of perjury and who knows or believes that the statement is false *or is aware that he is ignorant of the truth and* [*sic*] *falsity of the statement.* A statement made under an actual mistake and in a belief that it is true is not perjury even though the statement is false. The word 'willfully' simply means a purpose or willingness to commit the act or make the omission referred to." (Italics added.)

Rutter argues the trial court erred in giving an instruction under section 125 and the prosecution compounded this error by implying an unqualified statement something is true, when the person making the statement does not know whether or not it is true, is sufficient in itself to convict the person of perjury.

Section 125 has confused juries, attorneys and judges for more than 100 years, despite our Supreme Court's attempt to explain it.[4] The statute's flaw is that it sometimes leads to the erroneous conclusion a person may be found guilty of perjury based on the person's honest mistake about a fact. This is what happened in *People v. Von Tiedeman.* There the issue was whether the defendant had committed perjury in a previous case in answering " 'Certainly' " when shown a photograph of a woman named Sara Owen and asked if she was the woman he knew as Harriet Christy.[5] After reading the jury the text of section 125, which was the same then as it is now,[6] the trial court attempted in six different ways to explain what the statute meant.[7] In essence the court told the jury if the photograph shown to the defendant was not a photograph of the woman he knew as Harriet Christy but "the defendant testified unqualifiedly that it was, he thereby made an unqualified statement as a witness of a matter as absolutely true which he did not know to be true, and to make such a statement as that is so far forth to commit the crime of

---

[3] Section 125 states: "An unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false."

[4] *People v. Von Tiedeman* (1898) 120 Cal. 128, 132–137 [52 P. 155] and see *People v. Hagen* (1998) 19 Cal.4th 652, 663 [80 Cal.Rptr.2d 24, 967 P.2d 563].

[5] *People v. Von Tiedeman, supra,* 120 Cal. at page 130.

[6] See footnote 3, above.

[7] *People v. Von Tiedeman, supra,* 120 Cal. at pages 132–134.

perjury."[8] The unqualified nature of the statement is what made it perjury, the trial court told the jury.[9] " 'A witness may state in a court of justice that he thinks a certain thing is so, that he believes it is so, perhaps that he is informed that it is so—and of course it is no perjury if he has been so informed, or does believe it or supposes it to be so; but, if a witness undertakes to state, and does state positively and unqualifiedly that a material thing is so, when it is not so, he is necessarily giving false testimony, because he states that he knows something he does not know.' "[10]

In reversing the defendant's conviction the Supreme Court held the trial court's explanation of section 125 was erroneous because it "absolutely eliminates the whole question of criminal intent; and criminal intent is the vital element in every crime of perjury."[11] Under the explanations given, "[a] man honestly mistaken could be guilty of the crime."[12] The jury was instructed, in effect, "to convict the defendant, even though they were fully convinced that he honestly thought and believed that the photograph was that of the woman with whom he had the dealings."[13]

Rutter maintains the prosecutor in the present case made the same error as the trial judge in *Von Tiedeman*—equating an unqualified statement of that which one does not know to be true with "willfully stat[ing] as true any material matter which he or she knows to be false."[14] After paraphrasing section 125 the prosecutor told the jury: "Under the law of perjury, if someone states something that is true under penalty of perjury and they don't know whether it is true or not, that is a false statement." The prosecutor went on to state: "The defendant [made] unqualified statements under oath, under penalty of perjury, to things that based on his testimony before you in court he did not know to be true. And again, the law provides an unqualified statement that something is true, when the person making the statement does not know whether it is true or not true, is equal to a knowing false statement."

We agree the trial court erred in giving an instruction under section 125. We do not agree the error requires reversal.

---

[8] *People v. Von Tiedeman, supra,* 120 Cal. at page 133.

[9] *People v. Von Tiedeman, supra,* 120 Cal. at page 133.

[10] *People v. Von Tiedeman, supra,* 120 Cal. at page 133.

[11] *People v. Von Tiedeman, supra,* 120 Cal. at page 134.

[12] *People v. Von Tiedeman, supra,* 120 Cal. at page 134.

[13] *People v. Von Tiedeman, supra,* 120 Cal. at page 134.

[14] Section 118.

■ As our Supreme Court explained in *Von Tiedeman*, section 125 only applies to those rare cases in which the evidence would support a finding the defendant asserted the truth of something which might or might not be true but as to which he himself was totally ignorant.[15] "Section 125 . . . is designed to include those cases where a witness testifies to matters when he knows that he has no knowledge upon the matters as to which he gives testimony, or, as put by some law-writers, he testifies to matters of which he knows himself to be ignorant. The criminality in such cases is found in the fact that the witness absolutely knows when giving his testimony that he does not know anything about the matter to which he is testifying."[16] Section 125 does not apply to cases in which the defendant unqualifiedly asserts the truth of something as to which he has knowledge but is mistaken—this is clearly not perjury under section 118.[17]

To illustrate, assume a witness has unqualifiedly declared under penalty of perjury Smith was at the corner of Third and Main at 11:00 p.m. last Saturday night. The witness is not guilty of perjury if he saw someone he mistook for Smith at that location and time or if he saw Smith but was mistaken about the location or time. The witness is guilty of perjury, however, if he was at home asleep at 11:00 p.m. last Saturday because, even though Smith could have been at Third and Main at that time and date, "the witness absolutely knows when giving his testimony that he does not know anything about the matter to which he is testifying."[18]

The present case does not fit within section 125 as construed by our Supreme Court in *Von Tiedeman*[19] because Rutter was charged with the forgery of the photo release and the perjury count was based on Rutter's testimony: "Ms. Diaz's signature on the model release is not a forgery." Diaz's signature on the release was not a matter about which Rutter was "totally ignorant." If Rutter forged the release or knew it was forged then he was guilty of forgery[20] and his testimony the release was not a forgery was perjury. If Rutter did not forge the release or was honestly mistaken in his belief it was not forged then he was not guilty of forgery or perjury.

---

[15] *People v. Von Tiedeman, supra,* 120 Cal. at page 136.
[16] *People v. Von Tiedeman, supra,* 120 Cal. at page 136.
[17] *People v. Von Tiedeman, supra,* 120 Cal. at page 136.
[18] *People v. Von Tiedeman, supra,* 120 Cal. at page 136.
[19] See also *People v. Hagen, supra,* 19 Cal.4th at pages 663–664.
[20] A forgery conviction requires proof beyond a reasonable doubt the defendant knew the document was forged. (Section 470, subd. (d).)

■ Although the trial court erred in giving an instruction under section 125 the error does not require reversal of Rutter's perjury conviction.[21]

In addition to instructing the jury under section 125 the trial court instructed the jury Rutter had to know his testimony was false and in making the statement he had the specific intent to declare falsely under penalty of perjury. The court further instructed the jury a statement made under an actual mistake and in a belief it is true is not perjury even though the statement is false.[22] The jury was also given the usual instruction to "[c]onsider the instructions as a whole and each in light of all the others."

■ As to the prosecutor's emphasis on section 125 in his closing argument, an appellate court may consider the arguments of counsel in determining the probable impact of an instruction on the jury.[23] Here the prosecutor did not go so far as to argue an unqualified statement which turns out to be false is sufficient in itself to convict the defendant of perjury. At most the prosecutor neglected to state the applicable law completely.[24] But even if the prosecutor's closing argument could be construed as misconduct, a timely objection and proper admonition by the trial court would have cured the harm. Because no objection was made in the trial court the purported misconduct cannot be raised on appeal.[25]

Finally, it is not reasonably probable the outcome of the perjury charge would have been different if the court had not instructed under section 125. The jury found Rutter guilty of forgery which required a finding Rutter knew the release was forged. Thus the jury necessarily found Rutter committed perjury when he testified the release was not forged.

---

[21] CALJIC No. 7.22 which was based on the language of section 125 has been replaced by the Judicial Council of California Criminal Jury Instructions (2006) CALCRIM Nos. 2640 and 2641. These instructions contain paraphrases of section 125 in brackets with use notes stating the bracketed language should only be given "if supported by the evidence." (CALCRIM Nos. 2640, 2641.)

[22] In *People v. Louie* (1984) 158 Cal.App.3d Supp. 28, 44 and footnote 9 [205 Cal.Rptr. 247] the court suggested giving this "good faith" instruction is sufficient to cure any error in instructing under section 125.

[23] *People v. Young* (2005) 34 Cal.4th 1149, 1202 [24 Cal.Rptr.3d 112, 105 P.3d 487].

[24] Compare *People v. Baldwin* (1954) 42 Cal.2d 858, 871 [270 P.2d 1028].

[25] *People v. Morris* (1991) 53 Cal.3d 152, 220 [279 Cal.Rptr. 720, 807 P.2d 949].

## DISPOSITION

The judgment is affirmed.

Perluss, P. J., and Zelon, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 24, 2007, S147661. Moreno, J., did not participate therein.