[No. S063524. Dec. 7, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNNY ARDEAN HAGEN et al., Defendants and Appellants.

## COUNSEL

F. Thos. Caporael and Phillip I. Bronson, under appointments by the Supreme Court, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Garrett Beaumont, Carl H. Horst and Steven T. Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WERDEGAR, J.**—Defendant Johnny Ardean Hagen was convicted of three counts of willfully making and subscribing a tax return without belief in its material truth, a felony. (Rev. & Tax. Code, former § 19405, subd. (a)(1).)[1] The questions presented for review are whether the trial court properly instructed the jury on the meaning of willfulness in this statute; whether the convictions were supported with substantial evidence of willfulness; and whether the court erred in failing to instruct sua sponte on an asserted lesser included offense, the misdemeanor defined in former section 19401, subdivision (a).[2] Concluding the court committed no reversible instructional error and the convictions are supported by substantial evidence, we will affirm the judgment of the Court of Appeal, which affirmed the convictions.

### FACTUAL AND PROCEDURAL BACKGROUND

The convictions relate to tax returns for the years 1988, 1989 and 1990. During that time defendant Johnny Ardean Hagen (Johnny) was employed as

---

[1]Hereafter former section 19405(a)(1). All further unspecified statutory references are to the Revenue and Taxation Code. After the commission of these offenses, section 19405(a)(1) was repealed and reenacted as section 19705, subdivision (a)(1). (Stats. 1994, ch. 1243, §§ 58, 61.)

[2]Hereafter former section 19401(a), since repealed and reenacted as section 19701, subdivision (a). (Stats. 1993, ch. 31, §§ 24, 26.)

an officer of the California Highway Patrol. His wife, defendant Patricia Hagen (Patricia), was the office manager of an insurance agency. As part of her ordinary duties, Patricia deposited cash received from clients into the agency's trust account and recorded the amount of cash so deposited. These deposits were made about once a week. In June of 1990, David Deveny, who owned and operated the insurance agency, noticed a discrepancy between recent revenues and bank deposits. He then compared the agency's records of cash receipts against the records of cash bank deposits. Deveny found that in 1988 approximately $64,000 more cash was shown received than was deposited, in 1989 about $57,000 more and, through June 30, 1990, about $12,000 more. A certified public accountant who later reviewed the agency's records testified that a total of about $130,000 in cash receipts had not been deposited.

The Hagens deposited virtually all their wages, which were paid by check, into a joint checking account at Hemet Federal Savings and Loan Association. In addition, they made cash deposits into this account of $19,694 in 1988, $36,690 in 1989, and $14,277 in the first six months of 1990. Johnny personally made five cash deposits of $1,000 or larger in 1989-1990.

Both of the Hagens wrote checks on the account, Johnny's totaling more than $40,000 in the two and one-half years in question. The couple's disbursements from their savings and loan account exceeded deposits by check to the account by over $15,000 in 1988, $11,000 in 1989, and $24,000 in 1990. In addition, Johnny bought a horse trailer in April 1989 for about $4,000, paying in cash, and in October 1989 paid $2,100 in cash for a teller's check from their savings and loan. In 1988 through June 30, 1990, the Hagens made no cash withdrawals from the savings and loan's automated teller machines.

On their state and federal tax returns, the Hagens reported income of $55,238 in 1988, $56,673 in 1989, and $64,573 in 1990. In 1988, they reported interest income and a state tax refund in addition to their employment wages; in 1990 they reported an individual retirement account (IRA) distribution and unemployment compensation received by Patricia, as well as wages from employment. Their tax preparer testified that as part of his standard interview he had asked the Hagens, "Is there any other income?" Nonetheless, the Hagens did not report any other income, including any income from theft.

Deveny confronted Patricia with evidence of the missing money on July 11, 1990. Patricia said she "couldn't have taken that much," but admitted she might occasionally have taken money for gas. She said she did not want to,

or could not, go to prison. A week later, Deveny met with both Hagens. Johnny asked Deveny how they could solve the "problem" and offered to assign Deveny a deed to real property in Mariposa, an offer Deveny declined. Still later, Patricia told Deveny she was cashing in an IRA and would send him the proceeds; however, he never received any such money.

In defense, Patricia testified that others, especially including Deveny, had access to and collected the cash receipts, and that she merely deposited the cash she was given and recorded that amount, without checking it against receipt records. Patricia, however, was unable to explain the large cash deposits she and her husband made to their checking account or to identify the source of cash for the $4,000 horse trailer. Johnny did not testify.

Johnny and Patricia were each convicted of three counts of filing a false tax return. (Former § 19405(a)(1).) Patricia was also convicted of grand theft, with a finding that the property taken exceeded $100,000 in value. (Pen. Code, §§ 487, 12022.6.) The jury was unable to reach a verdict on the grand theft charge against Johnny, and the court declared a mistrial on that count.

The Court of Appeal affirmed the judgments. The court rejected defendants' contention the trial court erred by instructing the jury with CALJIC No. 1.20, which, following the language of Penal Code section 7, defines "willfully" as simply "with a purpose or willingness to commit the act or to make the omission in question." In doing so, the appellate court expressly disagreed with the decision in *People* v. *Smith* (1984) 155 Cal.App.3d 1103, 1157 [203 Cal.Rptr. 196], which adopted the definition developed by the United States Supreme Court in the interpretation of federal tax evasion statutes, according to which willfulness means the intentional violation of a known legal duty. The Court of Appeal then found the evidence sufficient to show willfulness under the Penal Code section 7 definition. Finally, on the question of whether former section 19401(a), misdemeanor filing of a false return, is a lesser included offense of the charged felony, former section 19405(a)(1), the court held it was not, because former section 19401(a) requires the return or other information actually be false, while, in the Court of Appeal's view, the felony, former section 19405(a)(1), can be violated by the filing of a *true* return that the taxpayer *believes* to be false as to some material matter.

We granted Johnny's petition for review.

DISCUSSION

I. *The Meaning of "Willfully" in Former Section 19405(a)(1)*

Former section 19405(a)(1) punished as a felon any person who "[w]illfully makes and subscribes any return, statement, or other document,

that contains or is verified by a written declaration that it is made under the penalties of perjury, and that he or she does not believe to be true and correct as to every material matter." (Stats. 1993, ch. 826, § 6, repealed by Stats. 1994, ch. 1243, § 58; see now § 19705, subd. (a)(1) [same].)

Prior to the decision in this case, the only published appellate decision construing "willfully" in former section 19405(a)(1) was *People* v. *Smith, supra,* 155 Cal.App.3d 1103 (*Smith*), disapproved on other grounds in *Baluyut* v. *Superior Court* (1996) 12 Cal.4th 826, 832-835 [50 Cal.Rptr.2d 101, 911 P.2d 1]. Smith was charged with willfully underreporting income in violation of former section 19405 and former section 19406,[3] an overlapping tax evasion statute that requires intent to evade taxation but does not require verification under penalty of perjury. Because of these differing elements, the *Smith* court held former section 19405(a) was not necessarily included in former section 19406. (*Smith, supra,* at pp. 1152-1157.) The court also concluded, however, that willfully in both statutes meant the same thing: that the defendant "voluntarily and intentionally violated a known legal duty." (*Id.* at p. 1157.) *Smith* relied for this definition on United States Supreme Court authority interpreting parallel federal tax fraud statutes. (*Ibid.*) We turn briefly to those federal laws and decisions.

Section 7206(1) of the Internal Revenue Code (26 U.S.C. § 7206(1)) is virtually identical to our former section 19405(a)(1) and present section 19705, subdivision (a)(1). It punishes as a felon any person who "[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . ." (Int.Rev. Code, § 7206(1).)

In *United States* v. *Bishop* (1973) 412 U.S. 346 [93 S.Ct. 2008, 36 L.Ed.2d 941] (*Bishop*), the high court comprehensively addressed the meaning of "willfully" in Internal Revenue Code section 7206(1) and other criminal tax fraud statutes. Echoing its earlier observation, in *United States* v. *Murdock* (1933) 290 U.S. 389, 394-395 [54 S.Ct. 223, 225-226, 78 L.Ed. 381] (*Murdock*), that the meaning of "willfully" varies and must be determined from the statutory context (*Bishop, supra,* at p. 356 [93 S.Ct. at p. 2015]), the court held the term has a uniform meaning in the federal criminal tax statutes; it "generally connotes a voluntary, intentional violation of a known legal duty." (*Id.* at p. 360 [93 S.Ct. at p. 2017].) " 'It is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care.' [Citation.] Degrees of negligence give rise in the tax system to civil penalties. The requirement of an offense committed

---

[3]Repealed and reenacted as section 19706. (Stats. 1993, ch. 31, §§ 24, 26.)

'willfully' is not met, therefore, if a taxpayer has relied in good faith on a prior decision of this Court. [Citations.]" (*Id.* at pp. 360-361 [93 S.Ct. at p. 2017].) In premising criminal liability on willfulness, the court explained, Congress "construct[ed] penalties that separate the purposeful tax violator from the well-meaning, but easily confused, mass of taxpayers." (*Id.* at p. 361 [93 S.Ct. at p. 2017].)

In *United States* v. *Pomponio* (1976) 429 U.S. 10 [97 S.Ct. 22, 50 L.Ed.2d 12] (*Pomponio*), the high court addressed the adequacy of jury instructions defining "willfully" in a prosecution under Internal Revenue Code section 7206(1). The court reaffirmed its *Bishop* definition of willfulness as " 'a voluntary, intentional violation of a known legal duty' " (*Pomponio, supra,* at p. 12 [97 S.Ct. at p. 23]) and held the trial court adequately instructed on the subject when it told the jury a willful act was one done " 'voluntarily and intentionally and with the specific intent to do something which the law forbids, that is to say with [the] bad purpose either to disobey or to disregard the law.' " (*Id.* at p. 11 [97 S.Ct. at p. 23], brackets in *Pomponio.*)

Most recently, in the case of a man who claimed to believe that wages are not income and that he therefore was not obliged to pay taxes or file returns, the high court explained that, under the *Bishop-Pomponio* definition, such a good faith belief, even if objectively unreasonable, would indeed negate the required element of willfulness. (*Cheek* v. *United States* (1991) 498 U.S. 192, 201 [111 S.Ct. 604, 610, 112 L.Ed.2d 617].) "Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty. . . . [C]arrying this burden [of showing the defendant knew his legal duty] requires negating a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws." (*Id.* at pp. 201-202 [111 S.Ct. at p. 610].) With considerable understatement, the court observed that "[t]he proliferation of statutes and regulations has sometimes made it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws." (*Id.* at pp. 199-200 [111 S.Ct. at p. 609].) Congress, by including willfulness as an element of certain criminal tax laws, has accordingly created an exception to the common law presumption that ignorance or mistake of law is no defense. (*Ibid.*)[4]

We conclude the Court of Appeal in *Smith* was correct in adopting the *Bishop-Pomponio* definition of willfulness. As noted, former section

---

[4]The concurring justice implies our agreement with the United States Supreme Court's interpretation of the statutory language is a deviation from the " ' "emphatic postulate . . . that ignorance of a law is no excuse for a violation thereof." ' " (Conc. opn. of Mosk, J., *post,* at p. 674, quoting *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 396 [149 Cal.Rptr. 375, 584 P.2d

19405(a)(1) was substantially identical to Internal Revenue Code section 7206(1), the federal criminal tax statute at issue in those cases. Our Legislature has generally followed the federal statutes in designing California's personal income tax system, making federal decisions interpreting substantially identical statutes unusually strong persuasive precedent on construction of our own laws. (*Holmes* v. *McColgan* (1941) 17 Cal.2d 426, 430 [110 P.2d 428]; *Rihn* v. *Franchise Tax Board* (1955) 131 Cal.App.2d 356, 360 [280 P.2d 893].) As we explained in adopting federal precedent on computation of capital gains, "A departure from federal practice in this respect might easily create myriad administrative difficulties inimical to the interests of both the state and the taxpayers. The legislature has consistently followed the federal provisions generally in the Personal Income Tax Act. This policy makes available to the state a ground work of relevant federal experience and judicial pronouncements." (*Holmes* v. *McColgan, supra*, at p. 430.)

The present case involves allegedly willful understatement of income on California personal income tax returns. The income required to be reported under California tax law, however, is generally defined by incorporation of federal tax law. (See §§ 17071 ["Gross income shall be defined by Section 61 of the Internal Revenue Code." (Fn. omitted.)], 17072, subd. (a) ["Section 62 of the Internal Revenue Code, relating to adjusted gross income defined, shall apply, except as otherwise provided." (Fn. omitted.)], 17073 ["Taxable income shall be defined by Section 63 of the Internal Revenue Code, except as otherwise provided." (Fn. omitted.)].) Indeed, California personal income tax forms do not call for the taxpayer to report most income independently of the federal form, instead simply adopting the reported federal figure, with certain adjustments possible or required on a separate schedule. (See, e.g., Franchise Tax Bd., 1997 form 540, line 13 [adopting federal adjusted gross

512].) Neither this court nor the federal high court, however, has suggested that mistake or ignorance of the law operates to *excuse* what would otherwise be criminal falsehoods. We hold only that the failure to comply with tax laws is not a violation of a particular penal statute, former section 19405(a)(1), if the noncompliance is not willful, i.e., if the taxpayer, in good faith, misunderstands or is ignorant of the pertinent provisions of the tax law. We agree malefactors cannot be permitted to redefine the criminal law by their own subjective misconceptions of that law. For that reason, mistake or ignorance of the *penal* law is almost never a defense. There are a number of circumstances, however, in which violation of a penal statute is premised on the violator's harboring a particular mental state with respect to the *nonpenal* legal status of a person, thing, or action. In such cases, the principle is "firmly established that defendant is not guilty if the offense charged requires any special mental element, such as that the prohibited act be committed knowingly, fraudulently, corruptly, maliciously or *wilfully*, and this element of the crime was lacking because of some mistake of nonpenal law." (Perkins & Boyce, Criminal Law (3d ed. 1982) pp. 1031-1032, italics added.) As Perkins and Boyce emphasize, the mistake must be one of *nonpenal* law. (*Id.* at p. 1034.) Thus, a taxpayer may defend against a section 19405(a)(1) charge on the basis, for example, that he mistakenly believed certain deductions were proper under the tax laws, but not on the basis that he was unaware it was a crime to lie on one's tax return.

income from federal form 1040], and schedule CA, pt. I [California income adjustments].) For an omission in reporting federally taxed income to be considered willful under California law, but not federal law, would be anomalous, since as to such income California requires no act independent from reporting on the federal form.

Moreover, the same considerations of legislative intent that guided the United States Supreme Court in its interpretation of "willfully" apply to state law as well. Like the filing of a federal return, the filing of a California personal income tax return is an act demanded by law of most California residents. By virtue of this and other reporting requirements, millions of Californians are subject to, and must attempt to conform to, a myriad of state laws and regulations (in addition to the many federal laws incorporated into state law). Most taxpayers cannot be expected to have special expertise in the area of tax law, and that many taxpayers, without intending to disobey the law, will occasionally err out of ignorance or a good faith misunderstanding of the law's requirements is inevitable. California law, like its federal model, provides a graduated scheme of civil penalties and misdemeanor and felony punishment to deter both honest mistakes and willful fraud. (See §§ 19131-19184, 19701-19706.) Our Legislature would have no more reason than Congress to impose the heaviest of these punishments—felony criminal liability—on a taxpayer who misstated information because of legal ignorance or a good faith misunderstanding. Rather, we think it likely the Legislature, like Congress, intended to use these graduated penalties to "separate the purposeful tax violator from the well-meaning, but easily confused, mass of taxpayers." (*Bishop, supra,* 412 U.S. at p. 361 [93 S.Ct. at p. 2017].)

Our view of the legislative intent is buttressed by the absence of any apparent legislative dissatisfaction with the federal definition adopted in *Smith, supra,* 155 Cal.App.3d 1103. Since 1984, when *Smith* was decided, the Legislature has amended section 19405 several times and reenacted it in current section 19705, but none of the amendments implicated or disavowed the interpretation set forth in *Smith.* (See Historical and Statutory Notes, 61 West's Ann. Rev. & Tax. Code (1994 ed.) foll. former § 19405, p. 581.)

The Attorney General offers three main reasons for not following the federal definition of willfulness, i.e., intentional violation of a known legal duty. First, the Attorney General argues that Penal Code section 7 provides a contrasting definition of "willfully" applicable to penal statutes generally, and in particular to the crime of perjury (Pen. Code, § 118), which is closely related to the offense defined by former section 19405(a)(1). The Court of Appeal, similarly, reasoned that section 19405(a)(1) "is a perjury statute"

and that the Penal Code section 7 definition of "willfully" applies "to the general crime of perjury defined in Penal Code section 118 and to the more specific crime of perjury committed in the course of filing a tax return defined in [former section 19405(a)(1)]." The standard criminal law instruction defining willfulness (CALJIC No. 1.20), given in this case, employs the language of Penal Code section 7.

Penal Code section 7 provides definitions for various terms used "in this code," applicable "unless otherwise apparent from the context." Subdivision 1 of the section defines "willfully" as "impl[ying] simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." Courts have sometimes drawn from this paragraph guidance for interpretation of penal statutes, including those appearing in other codes. (See, e.g., *People* v. *Bell* (1996) 45 Cal.App.4th 1030, 1042-1043 [53 Cal.Rptr.2d 156] [Civ. Code, §§ 890-894 (rent skimming)]; *People* v. *Gonda* (1982) 138 Cal.App.3d 774, 779 [188 Cal.Rptr. 295] [Corp. Code, § 31410 (willful violation of laws governing sale of franchises)].) By its own terms, however, Penal Code section 7 applies only when the statutory context does not indicate a different meaning, and in a number of statutory contexts "willfully" has been interpreted as requiring more than mere volition in committing the prohibited act or omission. (See *Kwan* v. *Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 182-183 [28 Cal.Rptr.2d 371] [collecting exemplary cases].)

Contrary to the Attorney General's argument, one of the statutory contexts in which willfulness has been held to mean more than simply volitional action is the crime of perjury, to which former section 19405(a)(1) was, we agree, closely related. In a perjury prosecution based on the defendant's having allegedly made an unqualified statement of a matter he did not know to be true (Pen. Code, § 125), this court held the "willfully" element of Penal Code section 118 applies and requires proof the defendant made such statement "with the consciousness that he did not know that it was true, and with the intent that it should be received as a statement of what was true in fact." (*People* v. *Von Tiedeman* (1898) 120 Cal. 128, 135 [52 P. 155]; see also *People* v. *Tolmachoff* (1943) 58 Cal.App.2d 815, 821 [138 P.2d 61] ["The use of the word 'wilfully' in a prosecution for perjury simply means that the witness made the allegedly perjurious statement with the consciousness that it was false; with the consciousness that he did not know that it was true and with the intent that it should be received as a statement

of what was true in fact."].)[5] ▮▮▮ As with the general crime of perjury, here too the meaning of willfully should be discovered, if possible, from statutory context, which, as already discussed, suggests the definition used in the parallel federal law. Thus, the existence of a default definition in Penal Code section 7 does not convince us that CALJIC No. 1.20, rather than the definition developed in the interpretation of federal criminal tax statutes, accurately defines "willfully" as used in former section 19405(a)(1).

Second, the Attorney General observes that former section 19405(a)(1) contained explicit language setting out a wrongful intent element, to wit, that the taxpayer "does not believe [the return, statement, or other document] to be true and correct as to every material matter." (*Ibid.*; see now § 19705, subd. (a)(1).) Therefore, to quote the Attorney General's brief, "the statute does not impose strict liability. The average citizen would recognize, irrespective of his or her sophistication in tax matters, that it is wrong to subscribe a false return. . . . Consequently, there is no reason to expand the intent requirement to include mistakes of law." Allowing mistake or ignorance of law as a defense to tax fraud under former section 19405(a)(1), the Attorney General asserts, would "substantially undercut the ability of the State to enforce its tax laws."

The Attorney General's argument is itself substantially undercut by its failure to account for federal law. As discussed earlier, the United States Supreme Court has interpreted "willfully" in the federal criminal tax statutes (including Internal Revenue Code section 7206(1), which is virtually identical to former section 19405(a)(1)), as requiring a voluntary, intentional violation of a known legal duty and, hence, as allowing a mistake of law defense. This interpretation dates at least from 1973, when *Bishop* was decided, and in substance from the high court's 1933 decision in *Murdock*, which held the willfulness requirement precluded criminal liability for a taxpayer who had "a bona fide misunderstanding as to his liability for the tax, as to his duty to make a return, or as to the adequacy of the records he

---

[5]Johnny contends that, in addition to its error in instructing with CALJIC No. 1.20, the trial court erred in failing to instruct, pursuant to the standard perjury instruction (CALJIC No. 7.21), that former section 19405(a)(1) requires proof of "specific intent to declare falsely under penalty of perjury." (Cf. *People* v. *Viniegra* (1982) 130 Cal.App.3d 577, 584 [181 Cal.Rptr. 848] [Perjury under Penal Code section 118 requires "the specific intent to declare ̥ falsely under oath or penalty of perjury." (Italics omitted.)].) Johnny cites no authority that such a requirement is part of the *willfulness* element of perjury, or that it is applicable to former section 19405(a)(1). To the extent the specific intent referred to is not part of the willfulness element of perjury, his contention goes beyond the scope of our review, which we decline to expand. To the extent the specific intent referred to *is* an aspect of willfulness, for purposes of former section 19405(a)(1) the concept it embodies appears to be adequately communicated by the federal description of willfulness as an intentional violation of a known legal duty.

maintained." (*Murdock, supra,* 290 U.S. at p. 396 [54 S.Ct. at p. 226].) Had the Supreme Court's interpretation of "willfully" posed serious obstacles to the enforcement of federal tax law, we are confident Congress would have taken action to reverse it. In actuality, federal and California law both provide the government a number of tools for tax enforcement not limited to felony punishment for willful and perjurious evasion. In California, the government's options include prosecution for a misdemeanor under present section 19701, subdivision (a) (former section 19401(a)), which does not require a "willful" act or omission. Prosecutions for tax fraud will not grind to a halt merely because a felony offense, former section 19405(a)(1) (present section 19705, subdivision (a)(1)), is interpreted to require the voluntary, intentional violation of a known legal duty.

Nor is it clear that former section 19405(a)(1)'s other mens rea requirement—lack of belief in the truth and correctness of the return—adequately serves, by itself, to identify in all cases those taxpayers whose misstatements are most blameworthy. Lack of belief in the return's correctness may not be precisely equivalent to knowledge of its falsity; the prosecutor in a given case might at least argue that a taxpayer who recklessly failed to discover the truth regarding information demanded on a return and who, for that reason, did not know the return to be false, nonetheless did not "believe [the return] to be true and correct." (See *Bishop, supra,* 412 U.S. at p. 361, fn. 9 [93 S.Ct. at p. 2009] [declining to address this question].) A taxpayer, moreover, might knowingly omit information from a tax return in the mistaken belief that he or she was not required to report that information. Such a taxpayer, arguably, would not believe the return to be entirely "true and correct." He or she would also have acted "willfully" under the Penal Code section 7 definition, but not under the federal tax crime definition. For the reasons already given, we believe applying the latter definition accords with the probable object of former section 19405(a)(1); our Legislature, like the federal Congress, most likely did not intend to treat such a taxpayer as harshly as one who, knowing of a duty to report, intentionally fails to do so.

Finally, the Attorney General argues the federal definition of willfulness articulated in *Bishop* and *Pomponio* does not illuminate the term's meaning in former section 19405(a)(1), because those decisions were rendered after former section 19405(a)(1) was adopted. As mentioned earlier, however, in 1933 the high court interpreted "willfully," in a criminal tax statute, as requiring proof of "bad faith or evil intent" and, hence, as precluding prosecution for a misstatement or omission arising from a bona fide mistake of law. (*Murdock, supra,* 290 U.S. at pp. 396-398 [54 S.Ct. at p. 226].) The predecessor statute to former section 19405(a)(1), former section 18431.1, was enacted in 1945, after the decision in *Murdock.* (Stats. 1945, ch. 645,

§ 91, p. 1285.)[6] ■ In any event, federal decisions in the area of income tax law can be persuasive on the interpretation of parallel California provisions whether or not they predate enactment of the state law. The greater extent of federal experience in income tax matters, and the value of legal coherence in an area where our laws are generally modeled on the federal system, suggest we should take interpretive guidance from federal decisions unless our statutes clearly demand a different interpretation. (See *Holmes* v. *McColgan, supra,* 17 Cal.2d at p. 430.)

■ We therefore conclude that willfulness, as an element of the offense prohibited by former section 19405(a)(1), requires the prosecution to prove the defendant made the perjurious statement in voluntary, intentional violation of a known legal duty. The claim of prejudicial instructional error in this case will be discussed in part III, *post.*

II. *Former Section 19401(a) as a Lesser Included Offense of Former Section 19405(a)(1)*

Former section 19401(a) (repealed and reenacted as section 19701, subdivision (a)) provided misdemeanor punishment for any person who, "[w]ith or without intent to evade [the state income tax laws], fails to file any return or to supply any information required under this part, or who, with or without such intent, makes, renders, signs, or verifies any false or fraudulent return or statement, or supplies any false or fraudulent information." (Stats. 1984, ch. 1490, § 36, p. 5234, repealed by Stats. 1993, ch. 31, § 24 and reenacted as § 19701, subd. (a), Stats. 1993, ch. 31, § 26.)

■ The Court of Appeal held former section 19401(a) was not a lesser included offense of former section 19405(a)(1) because the latter statute does not require that the information in the return, statement or other document actually be false, but only that the taxpayer "does not believe [it]

---

[6]The Attorney General concedes that former section 19405(a)(1) appears to be modeled on the predecessor of Internal Revenue Code section 7206(1), the virtually identical federal statute interpreted in *Bishop* and *Pomponio,* but emphasizes that the statute construed in *Murdock* was not the predecessor of Internal Revenue Code section 7206(1) but, rather, a misdemeanor statute punishing willful omissions, such as failure to file a return or supply required information. (*Murdock, supra,* 290 U.S. at p. 392 [54 S.Ct. at p. 224].) Such willful omissions, if done with the intent to evade taxation, are now prohibited in California by section 19706 (the successor to former section 19406), an alternative felony/misdemeanor provision. We think it unlikely, however, that the Legislature intended "willfully" to mean different things in two such closely related and overlapping provisions as former sections 19405 and 19406. Indeed, to construe former section 19406, the "wobbler" offense, to require not only an elevated level of willfulness but also, as is explicit in that statute, the intent to evade taxation, while construing former section 19405, a straight felony offense, to require only volitional action and lack of belief in truth, would seem anomalous.

to be true and correct as to every material matter." Thus a taxpayer who *thought* he or she was filing a false return, but who in fact had completed the return accurately, would (assuming other elements were satisfied) have violated former section 19405(a)(1) but not former section 19401(a), which requires either omission of required information or the inclusion of false information. On this reasoning, the test for lesser included offenses is not met: "An offense is necessarily included within a charged offense 'if under the statutory definition of the charged offense it cannot be committed without committing the lesser offense, or if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed.' [Citation.]" (*People* v. *Toro* (1989) 47 Cal.3d 966, 972 [254 Cal.Rptr. 811, 766 P.2d 577], disapproved on other grounds in *People* v. *Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3 [76 Cal.Rptr.2d 239, 957 P.2d 928].)[7]

 We disagree with the lower court's reading of former section 19405(a)(1). Although the statute does not explicitly require falsity, its language, history and purpose all suggest it was not intended to punish the purely subjective state of intending to lie on one's tax return. First, if falsity were not an element, the only act or omission required under the statute would be the filing of a completed tax return, an act not only innocent in itself, but one our tax law actually demands of most Californians. Although Johnny is not precisely correct that the Court of Appeal's interpretation would leave the statute without any *actus reus*, for the Legislature to punish as a felony the mere doing of a required act with a bad state of mind would appear unusual, to say the least.

In addition, we observe that the taxpayer, to violate former section 19405(a)(1), must lack belief in the return's truth or correctness as to a "material" matter. The test for materiality in this context has been variously stated. (See *U.S.* v. *Mittelstaedt* (2d Cir. 1994) 31 F.3d 1208, 1221 [information material because it " 'had the potential for hindering the IRS's efforts to monitor and verify [defendant's] tax liability' "]; *United States* v. *Taylor* (5th Cir. 1978) 574 F.2d 232, 235 ["whether the information is essential in order to permit the Internal Revenue Service to verify and monitor the reporting of income"]; *Smith, supra,* 155 Cal.App.3d at p. 1157, quoting *United States* v. *Null* (4th Cir. 1969) 415 F.2d 1178, 1181 [" 'whether a particular item must be reported in order that the taxpayer estimate and compute his tax correctly' "].) Whatever the precise standard, materiality

---

[7]The counts of the information charging violation of former section 19405(a)(1) were generally in the language of the statute and hence did not expressly allege falsity of the returns. We are concerned, therefore, only with the offense as defined by statute and not as charged.

clearly requires some *objective* potential for interference with the calculation or monitoring of income or tax liability. How true and correct information on a return would have any such potential, even if the taxpayer did not believe it to be true, is difficult to see. In requiring materiality, the Legislature impliedly suggested falsity was required as well.

As previously noted, the offense described in former section 19405(a)(1) is closely related to the crime of perjury. In common with perjury as prohibited by Penal Code section 118, it requires a statement made under penalty of perjury, materiality, willfulness, and knowledge of falsity (in Penal Code section 118) or lack of belief in the truth of the matter asserted (in former section 19405(a)(1)). Former section 19405(a)(1)'s predecessor statute, former section 18431.1, originally provided that any person who willfully made or subscribed a return without believing it true and correct as to every material matter "shall be subject to the penalties prescribed for perjury by the Penal Code of this State." (Stats. 1945, ch. 645, § 91, p. 1285.) As defined in Penal Code section 118, the general crime of perjury requires proof of falsity. (*People* v. *Di Giacomo* (1961) 193 Cal.App.2d 688, 692 [14 Cal.Rptr. 574]; see Pen. Code, § 118, subd. (b) [requiring proof of falsity by more than the testimony of a single witness].) Yet, under the Court of Appeal's interpretation, former section 19405(a)(1), unlike perjury as defined in Penal Code section 118, would not require the information stated to be false. Neither the Court of Appeal nor the Attorney General suggests any reason for the Legislature to omit this central, traditional element of perjury when enacting a felony statute to punish the making of a perjurious tax return.

Neither this court, interpreting former section 19405(a)(1), nor the United States Supreme Court, interpreting Internal Revenue Code section 7206(1), has addressed the question whether violation of either law requires a showing of falsity. Many state and federal courts, however, have either held or assumed falsity is required, relying either on the relationship of these statutes to the crime of perjury or simply on common sense. For example, in *Kolaski* v. *United States* (5th Cir. 1966) 362 F.2d 847, 848, the court said of Internal Revenue Code section 7206(1): "The statute here involved is a perjury statute. As in the general statute on perjury, 18 U.S.C.A. § 1621, *the gist of the offense is a false statement*, willfully made, of a material matter." (Italics added; accord, *United States* v. *Mirelez* (5th Cir. 1974) 496 F.2d 915, 916-917; *United States* v. *Fontenot* (5th Cir. 1980) 628 F.2d 921, 923 ["[T]he government must prove both *falsity as to a material matter* in the tax return and knowledge of such falsity by the accused at the time the return was signed." (Italics added.)].) In *United States* v. *Romanow* (1st Cir. 1975) 509 F.2d 26, 28, the court, discussing materiality, similarly relied on general

perjury concepts to elucidate the intent of Internal Revenue Code section 7206(1): "We have said that the primary purpose of section 7206(1) 'is to impose the penalties of perjury upon those *who wilfully falsify* their returns regardless of the tax consequences of the falsehood.' [Citations.] Perjury occurs when *the false entry* is made, even if never relied upon." (Italics added.) The Ninth Circuit Court of Appeals, similarly, has held that to prove a violation of Internal Revenue Code section 7206(1), the government must show the defendant "(1) filed a return, statement, or other document *that was false as to a material matter*. . . ." (*U.S.* v. *Hanson* (9th Cir. 1993) 2 F.3d 942, 945, italics added.)[8]

Among California cases, the only published decision actually to address this issue was *Smith, supra*, 155 Cal.App.3d 1103.[9] Discussing the relationship between former sections 19405 and 19406, the court there held both sections required proof the defendant willfully made and signed a return, "*which return was false.*" (*Smith, supra*, at p. 1157, fn. omitted, italics added.) In a footnote, the court observed that "[t]echnically, section 19405 could be violated if a taxpayer filed an accurate return which he believed to be inaccurate, but one doubts such behavior will be a subject of prosecution." (*Id.* at p. 1157, fn. 27.) Although we must agree with the Attorney General that the likelihood of prosecution under particular circumstances does not, in itself, determine the elements of an offense, we also agree with what we take to be the point of the *Smith* court's remarks: the legislative purposes of former section 19405(a)(1) probably do not include the prosecution of those Californians who, while filing entirely accurate returns, subjectively entertained doubts as to the truth of their own declarations. Much more probably, former section 19405(a)(1), like its federal counterpart, was intended to punish those who " 'wilfully falsify their returns.' " (*United States* v. *Romanow, supra*, 509 F.2d at p. 28.)

The Attorney General also argues that former section 19401(a) is not included within former section 19405(a)(1) because former section 19401(a)

---

[8]The Attorney General asserts the federal courts "disagree" on this issue. None of the four cases he cites against inclusion of a falsity element so holds, however; they merely fail to mention falsity in reviewing the elements of the offense. In two of the decisions, moreover, the offense prohibited in Internal Revenue Code section 7206(1) is nonetheless referred to as filing or subscribing a "false" tax return. (*U.S.* v. *McCord* (5th Cir. 1994) 33 F.3d 1434, 1450; *U.S.* v. *Aramony* (4th Cir. 1996) 88 F.3d 1369, 1381-1382; see also *United States* v. *Carter* (11th Cir. 1984) 721 F.2d 1514, 1539 ["filing a false income tax return"].)

[9]As with the federal cases, however, a number of California decisions have assumed falsity is required. (See, e.g., *People* v. *Superior Court (Dorsey)* (1996) 50 Cal.App.4th 1216, 1221 [58 Cal.Rptr.2d 165] [describing the former section 19405(a)(1) offense as "subscribing a false tax return"]; *People* v. *Creath* (1995) 31 Cal.App.4th 312, 315 [37 Cal.Rptr.2d 336] ["filing a false income tax return"]; *People* v. *Rapoport* (1956) 140 Cal.App.2d 848 [295 P.2d 910] [former section 18431.1: "making and subscribing a false return"].)

requires a false "return or statement," while former section 19405(a)(1) applies, additionally, to a false statement made in any "other document." This argument fails to take into account that former section 19401(a) also punishes anyone who "supplies any false or fraudulent information." A violation of former section 19405(a)(1) committed by subscribing any false "document" under penalty of perjury would also constitute the supplying of false or fraudulent information in violation of former section 19401(a).

For these reasons, we conclude that falsity or inaccuracy of the return, statement or other document is an element of the offense prohibited in former section 19405(a)(1) and that the misdemeanor offense, former section 19401(a), is therefore necessarily included therein. In the next part we address, inter alia, whether an instruction on the lesser included offense was required in this case.

### III. *Application to This Case*

As we held earlier, by charging the jury with CALJIC No. 1.20 rather than the federally derived *Smith* definition of willfulness, the trial court misdescribed an element of the charged crime. Misdescription of an element of a charged offense is subject to harmless error analysis and does not require reversal if the misdescription was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]; *People* v. *Harris* (1994) 9 Cal.4th 407, 416 [37 Cal.Rptr.2d 200, 886 P.2d 1193]; *People* v. *Dyer* (1988) 45 Cal.3d 26, 61-64 [246 Cal.Rptr. 209, 753 P.2d 1].)

The court's instructions, although they misdefined willfulness, did not in any way restrict the evidence the jury could consider as to that element of the crime. In convicting the Hagens on each count of violating former section 19405(a)(1), the jury necessarily found they failed to report as income the money Patricia embezzled from her employer, cash they had both deposited in their joint checking account. The jury found the Hagens had made and subscribed the returns with, in the words of CALJIC No. 1.20, "a purpose or willingness" to do so, and that, in the language of former section 19405(a)(1), with which the jury was also instructed, they "did not believe [the returns] to be true and correct as to every material matter." The jury heard evidence that the Hagens' tax preparer had asked them about "other income"; no evidence was presented that they omitted the embezzled income because of a good faith mistake of law as to their reporting duty. On these facts, had the jury harbored reasonable doubt as to whether the Hagens knew of their reporting obligation, it would not have found beyond a reasonable doubt that they did not believe their returns to be true and correct

as to every material matter. Thus, on the evidence presented to it, this jury, having made the above findings, could not reasonably have failed to find, had it been asked, that Johnny acted in intentional violation of a known legal duty. The error in misdefining willfulness was therefore harmless, in that "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (*People* v. *Harris*, *supra*, 9 Cal.4th at p. 424, quoting *Chapman* v. *California*, *supra*, 386 U.S. at p. 24 [87 S.Ct. at p. 828].)[10]

For the same reason, the evidence was clearly sufficient to support a finding of willfulness. Johnny's repeated, large and unexplained cash deposits and purchases, his joint control and use of the couple's checking account, the sizable excess of the couple's disbursements over their reported income, and Johnny's offer to deed Deveny real property in recompense for the theft—an offer made in July 1990, before Johnny signed his 1990 tax return—provide ample proof Johnny knew of the unreported stolen funds when he signed his returns. The Hagens were asked if they had additional income and said nothing. Since it has long been settled law that embezzled funds are taxable income (see *James* v. *United States* (1961) 366 U.S. 213 [81 S.Ct. 1052, 6 L.Ed.2d 246]), Johnny cannot rely on legal uncertainty to establish lack of willfulness. In the absence of any contrary evidence, the jury could reasonably infer beyond a reasonable doubt that Johnny acted willfully, under either definition, in failing to include this illicit income on his tax returns.

Johnny cites to *Smith*, *supra*, 155 Cal.App.3d at page 1178, wherein the court quoted from *Holland* v. *United States* (1954) 348 U.S. 121, 139 [75 S.Ct. 127, 137, 99 L.Ed. 150]: " '[W]illfulness "involves a specific intent which must be proven by independent evidence and which cannot be inferred from the mere understatement of income." ' " That reference, however, does not assist Johnny's case. Putting aside, as the *Smith* court noted, that *Holland* did not involve the federal parallel to former section 19405(a)(1) and the *Holland* gloss on willfulness may not have survived *Bishop*, *supra*, 412 U.S. 346 and *Pomponio*, *supra*, 429 U.S. 10 (see *Smith*, *supra*, at p. 1178), the quoted passage from *Holland* is qualified by the statement that a finding of willfulness *was* supported, in that case, by "a consistent pattern of underreporting large amounts of income" (*Holland* v. *United States*, *supra*, at p. 139 [75 S.Ct. at p. 137]), an apt description of the

---

[10]Our conclusion here does not, as the author of the concurring and dissenting opinion claims, contradict our statement, in part I of the discussion, *ante*, that the two mental elements of former section 19405(a)(1) may not be perfectly coextensive. (Conc. and dis. opn. of Kennard, J., *post*, at pp. 681-682.) No contradiction exists between the statement that two elements of an offense are, in general, not identical or coextensive, and the statement that on the facts of a particular case the jury could not reasonably find one without finding the other.

evidence in this case as well. In addition, here evidence beyond the understatement of income—Johnny's cash deposits and purchases, his personal use of the joint checking account and his July 1990 offer to Deveny—supports the inference Johnny acted with knowledge of the illicit income and in intentional violation of his legal duty to report income to the tax authorities.

 Finally, we conclude that, although former section 19401(a) is a lesser included offense of former section 19405(a)(1), the trial court in this case was not required to instruct on the misdemeanor offense. Instructions on a lesser included offense are not required whenever there is "*any* [supporting] evidence, no matter how weak, . . . but only when the evidence is substantial enough to merit consideration by the jury." (*People* v. *Barton* (1995) 12 Cal.4th 186, 195, fn. 4 [47 Cal.Rptr.2d 569, 906 P.2d 531], italics in original; accord, *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) Instructions are therefore required sua sponte only if the proof at trial includes substantial evidence that the lesser offense, but not the greater, was committed; such evidence is "substantial" only if a reasonable jury could find it persuasive. (*People* v. *Barton*, *supra*, at p. 201, fn. 8.)

 The record here contains no substantial evidence of the lesser offense. In order to find Johnny violated former section 19401(a), but not former section 19405(a)(1), the jury would have had to conclude, beyond a reasonable doubt, that he underreported income on his tax returns, while, at the same time, having reasonable doubt as to whether he harbored both of the mental elements of former section 19405(a)(1): willfulness and a lack of belief in the returns' accuracy. As already discussed, the evidence provided no basis for reasonable doubt as to willfulness: nothing in the record supports a theory of good faith mistake or ignorance as to the legal duty to report income. Nor was there any substantial evidence from which the jury could have concluded Johnny believed the statement of income on his returns to be complete. Johnny personally made many large cash deposits and purchases with funds not reported as income, wrote checks on the couple's joint checking account and offered, before signing his 1990 return, to make a form of restitution to the embezzlement victim. The resulting strong inference he knew of the unreported income was uncontradicted by any direct or circumstantial evidence he lacked such knowledge. A reasonable jury could not have concluded, based on this record, that Johnny failed to report the stolen money as income, but did so nonwillfully or in the belief

his statements of income were accurate. No instruction on the lesser included offense described in former section 19401(a) was therefore required.[11]

During deliberations, the jury asked the court: "With respect to the Special Verdict counts II, III, IV for Johnny Hagen, does the lack of knowledge of the alleged embezzled funds by Patty entitle Johnny to be found not guilty of the above stated verdicts even though he may be guilty of counts II, III, IV with respect to unreported income which is considered other than embezzled [?]" The special verdict forms the jury referred to were requested by the defense and asked the jury to state whether the tax counts (as distinguished from the grand theft count) were committed with respect to the embezzled money. The jury ultimately found all the tax counts did involve the stolen money. Johnny argues the jury's question shows the jury doubted "whether all the elements of the charged offense were present," thereby obliging the court to instruct "at that point, if not sooner," on the lesser offense. We disagree. The jury's concern was apparently with the requirements for affirmative findings on the requested special verdicts, not with the elements of the charged tax violations themselves. The question, moreover, is ambiguous as to whether it concerns possible ignorance of the embezzlement itself or only of the unreported embezzled income. Finally, the jury's question was not evidence; Johnny cites no authority for the proposition that, despite the absence of substantial evidence of a lesser offense, the trial court has a sua sponte obligation to instruct on that offense after receiving a question from the jury during deliberations. We conclude this question did not create such an obligation.

### DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Chin, J., and Brown, J., concurred.

**MOSK, J.**—I concur in the result.

---

[11]Despite the lack of any evidence suggesting Johnny failed to report the stolen funds because of ignorance or mistake as to the tax law, and despite the fact his attorney raised no such claim to the court or jury at any point in the trial (in his closing statement, counsel instead argued only that the prosecution had not proven Johnny knew about the money at all), Justice Kennard supposes the jury, if instructed on the lesser offense, might have decided Johnny knew about the money but believed he was not required to report it because it was illegally obtained. (Conc. and dis. opn. of Kennard, J., *post*, at p. 683.) On the evidence in this case, this would have been pure speculation, in which a reasonable juror would have no cause to engage. In any event, on these facts such a jury finding, even if possible, was certainly not reasonably probable; for that reason, any error in failing to instruct on the lesser offense was harmless. (*People* v. *Breverman* (1998) 19 Cal.4th 142, 178 [77 Cal.Rptr.2d 870, 960 P.2d 1094].)

I agree with the majority that former Revenue and Taxation Code section 19401 (all further unspecified statutory references are to the Revenue and Taxation Code) is necessarily included in former section 19405, subdivision (a)(1) (hereafter former section 19405(a)(1)). I further agree that failure to give such an instruction under the peculiar facts of this case was not reversible error. And I agree that former section 19405(a)(1) is not intended to punish as a felon the taxpayer who innocently or negligently makes a false statement on his tax return. But like the Attorney General, I do not agree that it is correct to incorporate into former section 19405(a)(1) the additional element that the taxpayer must commit a "voluntary, intentional violation of a known legal duty." (Maj. opn., *ante*, at p. 666.) The literal terms of the statute themselves define with sufficient precision the proper mental state requirements, and there is no need to add an additional requirement that is not only without basis in the language of the statute but is contrary to well-established legal principles.

Penal Code section 7, paragraph 1 states that "unless otherwise apparent from the context: [¶] . . . [t]he word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate the law, or to injure another, or to acquire any advantage." The reason for this "default" interpretation of the term "willfully" is readily apparent. " 'It is an emphatic postulate of both civil and penal law that ignorance of a law is no excuse for a violation thereof. Of course it is based on a fiction, because no man can know all the law, but it is a maxim which the law itself does not permit anyone to gainsay. . . . The rule rests on public necessity; the welfare of society and the safety of the state depend upon its enforcement. . . . [If permitted] the plea [of ignorance] would be universally made, and would lead to interminable questions incapable of solution. Was the defendant in fact ignorant of the law? Was his ignorance of the law excusable? The denser the ignorance the greater would be the exemption from liability.' " (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 396 [149 Cal.Rptr. 375, 584 P.2d 512].) The majority contend that the context of former section 19405(a)(1) requires a departure from the Penal Code section 7 definition of "willfully." As explained below, I disagree that any such departure is warranted.

Former section 19405(a)(1) punished as a felon the taxpayer who "[w]illfully makes and subscribes any return, statement, or other document, that contains or is verified by a written declaration that it is made under the penalties of perjury, and that he or she does not believe to be true and correct as to every material matter." (As amended by Stats. 1993, ch. 826, § 6, repealed by Stats. 1994, ch. 1243, § 58; see now § 19705, subd. (a)(1)

[same].) Thus, former section 19405(a)(1) contains an explicit two-part mental state requirement. First, the taxpayer must act "willfully" (*ibid.*), which, as noted, generally means simply with a "purpose or willingness to commit the act." (Pen. Code, § 7.) Second, the taxpayer must also make and subscribe a return or other document made under penalty of perjury that he or she "does not believe to be true and correct as to every material matter." (Former § 19405(a)(1).) Accordingly, former section 19405(a)(1) already encompasses only those who act with bad intent—i.e., an intent to supply the government with materially false tax information. Thus, although I agree with the majority that the Legislature did not intend under former section 19405(a)(1) " ' "to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care" ' " or " '[d]egrees of negligence' " (maj. opn., *ante*, at p. 659), there is no reason to depart from Penal Code section 7's definition of "willfully" in order to effectuate this intent. The additional mental state requirement provided explicitly by the statute— that the taxpayer must supply information that he or she "does not believe to be true and correct as to every material matter"—already accomplishes this legislative purpose.

The majority almost concede as much. (See maj. opn., *ante*, at p. 665.) But they state that it is not "clear that former section 19405(a)(1)'s other mens rea requirement—lack of belief in the truth and correctness of the return— adequately serves, by itself, to identify in all cases those taxpayers whose misstatements are most blameworthy. Lack of belief in the return's correctness may not be precisely equivalent to knowledge of its falsity; the prosecutor in a given case might at least argue that a taxpayer who recklessly failed to discover the truth regarding information demanded on a return and who, for that reason, did not know the return to be false, nonetheless did not 'believe [the return] to be true and correct.' [Citation.] A taxpayer, moreover, might knowingly omit information from a tax return in the mistaken belief that he or she was not required to report that information. Such a taxpayer, arguably, would not believe the return to be entirely 'true and correct.' He or she would also have acted 'willfully' under the Penal Code section 7 definition, but not under the federal tax crime definition. . . . [W]e believe applying the latter definition accords with the probable object of former section 19405(a)(1); our Legislature, like the federal Congress, most likely did not intend to treat such a taxpayer as harshly as one who, knowing of a duty to report, intentionally fails to do so." (*Ibid.*)

Of the two problems the majority identify in the above paragraph in interpreting the phrase "does not believe to be true and correct as to every material matter," I will address the second one first. If a taxpayer omits information from a tax return in the belief that he or she was not required to

report that information, then presumably he or she would still believe the return to be "true and correct as to every material matter." In other words, in that instance, the taxpayer would believe that the information submitted on the return was true and correct and would believe that the omitted information was legitimately omitted.

The first problem identified by the majority is of the "taxpayer who *recklessly* failed to discover the truth regarding information demanded on a return and who, for that reason, did not know the return to be false, [but] did not 'believe [the return] to be true and correct.' " (Maj. opn., *ante*, at p. 665, italics added.) This problem merits more careful consideration. "Recklessness" generally signifies action in spite of subjective awareness of a grave risk. (See *People* v. *Estrada* (1995) 11 Cal.4th 568, 577 [46 Cal.Rptr.2d 586, 904 P.2d 1197] [defining "reckless indifference to human life"].) Thus a taxpayer who, for example, although unaware of any specific untrue statements in the return, nonetheless entertains general doubts as to his or her ability to file a return free of error, is nonetheless to be regarded as one who believes his or her return "to be true and correct as to every material matter." But if on the other hand a taxpayer believes that his or her return was *probably* false as to some particular, material feature—that wages are "probably" income but fails to report wage income nonetheless—then, in my view, such an individual has in fact filed a return not believing his or her return "to be true and correct as to every material matter." Thus, at least certain forms of recklessness should indeed be encompassed by former section 19405(a)(1), and it is unclear if the majority would hold otherwise. In any case, I believe that, rather than speculating about what prosecutors "might" argue about the meaning of the phrase "does not believe to be true and correct as to every material matter," we should clarify that meaning and thereby obviate the need for importing the "voluntary and intentional violation of a known legal duty" language into a statute that does not, on its face, have such a requirement.

Moreover, when the Legislature has seen fit to criminalize a specific intent to evade the law in the tax statutes, it has done so explicitly. Thus, former section 19406 (now section 19706), part of the same statutory scheme as former section 19405(a)(1), punishes "any person [who] . . . willfully fails to file any return or to supply any information with intent to evade any tax imposed by" specified provisions. Thus the Legislature made "intent to evade the law" an element of the crime through the explicit use of that term, not through the unconventional use of the term "willfully." Indeed, if "willfully" meant the same in former section 19406 as it did in former section 19405(a)(1), then there would have been no need to include the phrase "intent to evade any tax" in the former section 19406.

I recognize that in so interpreting former section 19405(a)(1), I am at variance with United States Supreme Court's interpretation of a virtually identical federal statute. But as the majority acknowledge, the interpretation in question did not come about until 1973 in *United States* v. *Bishop* (1973) 412 U.S. 346, 360 [93 S.Ct. 2008, 2017, 36 L.Ed.2d 941]. The predecessor to former section 19405(a)(1) was enacted in 1943, and therefore the *Bishop* court's interpretation had no role in the formation of the Legislature's intent.

There were two United States Supreme Court decisions prior to 1945 that interpreted "willfully" in the context of federal tax statutes to require a bad purpose. In *United States* v. *Murdock* (1933) 290 U.S. 389, 392 [54 S.Ct. 223, 224, 78 L.Ed. 381], the court considered a statute that punished as a misdemeanor a failure " 'to pay any tax, or . . . to make a return, keep any records, or supply any information, for the purposes of the computation, assessment, or collection of any tax imposed by' " specified provisions. The court recognized that "[a]id in arriving at the meaning of the word 'willfully' may be afforded by the context in which it is used . . . ." (*Id.* at p. 395 [54 S.Ct. at p. 226].) In arriving at the conclusion that "willfully" signified "evil motive," the court focused on the fact that the statute punished omissions as well as affirmative acts. (*Ibid.*) "Congress did not intend that a person, by reason of a bona fide misunderstanding as to his liability for the tax, as to his duty to make a return, or as to the adequacy of the records he maintained, should become a criminal by his mere failure to measure up to the prescribed standard of conduct." (*Id.* at p. 396 [54 S.Ct. at p. 226].)

In *Spies* v. *United States* (1943) 317 U.S. 492 [63 S.Ct. 364, 87 L.Ed. 418], the court considered a statute that made it a felony for a person who " 'willfully attempts in any manner to evade or defeat any tax imposed by' " specified provisions. (*Id.* at p. 494, fn. 2 [63 S.Ct. at p. 366].) This was in contrast to a misdemeanor statute that punished simply the "willful failure to pay" income tax or supply the proper information. (*Id.* at p. 493 [63 S.Ct. at p. 365].) The court again acknowledged that "willful . . . is a word of many meanings, its construction often being influenced by context." (*Id.* at p. 497 [63 S.Ct. at p. 367].) The court derived the differing meanings of "willful" in the two statutes not so much from the word itself, but from the "attempt to evade" language in the felony statute. (*Id.* at pp. 498-499 [63 S.Ct. at pp. 367-368].) Contrasting the felony and misdemeanor statutes, the court stated: "Willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony." (*Id.* at p. 499 [63 S.Ct. at p. 368].)

Thus, both *Murdock* and *Spies* concern statutes that sanctioned omissions and failures to perform statutory duty, and the court was concerned to make

clear that it was not the intent of Congress to make felonious those omissions and failures because of inadvertence and negligence. Both cases acknowledged that the meaning of "willful" depended on the context of the statute. Neither case dictates that the term must be understood in other than its usual sense when the statute in question criminalizes *affirmative acts of material deception* in sworn legal documents. Therefore, there is no reason to believe that the Legislature in 1945, when adopting the predecessor to former section 19405(a)(1), was influenced by the United States Supreme Court's interpretation of the term "willful" in quite different contexts.

It is true that there is a virtue to having our tax law consistent with federal law. As the majority state, quoting *Holmes* v. *McColgan* (1941) 17 Cal.2d 426, 430 [110 P.2d 428]: " 'A departure from federal practice . . . might easily create myriad administrative difficulties inimical to the interests of both the state and the taxpayers.' " (Maj. opn., *ante*, at p. 661.) In *Holmes*, the court was concerned that a state law method of computing capital gains different from the federal one would cause confusion. (*Holmes*, *supra*, 17 Cal.2d at p. 430.) But in the present case, we would not be creating a discrepancy between what federal and state law requires of a taxpayer, but would rather be recognizing a difference, perhaps, in the consequences of failing to meet federal and state statutory obligations. It is difficult to fathom how this departure from federal law in enforcing the felony tax reporting statute will create "myriad administrative difficulties." Thus, the fact that the most sensible interpretation of former section 19405(a)(1) is somewhat at variance with federal law does not persuade me that federal law should be followed.

Because I conclude there was no instructional error, I, like the majority, would affirm the judgment of the Court of Appeal.

**KENNARD, J.,** Concurring and Dissenting.—This case presents two questions of general significance:

1. What is the meaning of the term "willfully" in former section 19405, subdivision (a)(1), of the Revenue and Taxation Code (now section 19705, subdivision (a)(1), of the same code; hereafter former section 19405(a)(1))?

2. Is the misdemeanor offense defined in former section 19401, subdivision (a), of the Revenue and Taxation Code (now section 19701, subdivision (a), of the same code; hereafter former section 19401(a)) an offense necessarily included within the offense defined in former section 19405(a)(1)?

The majority resolves the first issue by holding, in part I of its opinion, that a defendant acts "willfully," as that term is used in former section

19405(a)(1), only if the defendant voluntarily and intentionally violates a known legal duty. (Maj. opn., *ante*, at pp. 660, 666.) The majority resolves the second issue by holding, in part II of its opinion, that the misdemeanor offense defined in former section 19401(a) is an offense necessarily included within the offense defined in section 19405(a)(1). (Maj. opn., *ante*, at p. 670.) To reach the latter conclusion, the majority also holds that the felony offense defined in former section 19405(a)(1) requires, as one of its elements, that the information in the tax return, statement, or other document be actually false. (Maj. opn., *ante*, at pp. 667, 670.) I agree with each of these holdings.

But I disagree with most of the majority opinion's part III, in which the majority applies these holdings to determine whether in this proceeding defendant Johnny Ardean Hagen was properly convicted of the felony offense defined in former section 19405(a)(1). Here, the majority concludes: (1) the trial court's error in misdescribing for the jury the mental state required by former section 19405(a)(1) was harmless and does not require reversal of Hagen's convictions (maj. opn., *ante*, at pp. 670-671); (2) the evidence at trial is sufficient to support a finding that defendant had the required mental state (*id.* at pp. 671-672); and (3) in light of the evidence, the trial court was not required to instruct the jury on the necessarily included misdemeanor offense defined in former section 19401(a) (maj. opn., *ante*, at pp. 672-673).

I agree that sufficient evidence was presented at trial to support a jury determination that defendant Johnny Hagen acted with the required mental state of willfulness. But the jury never made this determination because the erroneous jury instructions failed to present the issue for the jury's resolution, and this error may not be dismissed as harmless on this record. I conclude also that the trial court's instructions to the jury were erroneous not only in misdescribing the mental element of the offense defined in former section 19405(a)(1) but also in failing to provide the jury with the option of convicting Hagen of the necessarily included offense defined in former section 19401(a). In my view, these errors require reversal of Hagen's judgment of conviction and a remand for retrial.

I

Former section 19405(a)(1) states that a person commits a felony if that person "[w]*illfully* makes and subscribes any return, statement, or other document, that contains or is verified by a written declaration that it is made under the penalties of perjury, and that he or she does not believe to be true and correct as to every material matter." (As amended by Stats. 1993, ch.

826, § 6 and repealed by Stats. 1994, ch. 1243, § 58; see now § 19705, italics added.) The majority correctly construes the term "willfully" in former section 19405(a)(1) as meaning that in committing the proscribed act—making and subscribing a materially false tax return—the person voluntarily and intentionally violated a known legal duty.

In this case, the jury's verdict convicting defendant Johnny Hagen of three counts of violating former section 19405(a)(1) was based on his failure to report as income, on three consecutive joint state income tax returns for himself and his wife, certain funds that his wife had embezzled from her employer. The jury returned these verdicts after the trial court, in its instructions to the jury, failed to correctly explain the meaning of "willfully" in former section 19405(a)(1). The trial court told the jury that "willfully" in this context means "with a purpose or willingness to commit the act or to make the omission in question." Under the court's instruction, the jury was not required to determine whether Hagen knew he had a legal duty, when preparing and executing each of the joint state income tax returns, to report embezzled funds as income. Under the court's instruction, it was sufficient that Hagen intentionally signed and submitted a return that failed to include the embezzlement proceeds in the reported income.

As the majority recognizes, the trial court's instruction is erroneous because it misdescribes an element of the offense. As the majority also recognizes, this misdescription of an element of the offense is federal constitutional error subject to the harmless error standard that the United States Supreme Court enunciated in *Chapman* v. *California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]. Under that standard, the essential inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (*Sullivan* v. *Louisiana* (1993) 508 U.S. 275, 279 [113 S.Ct. 2078, 2081, 124 L.Ed.2d 182], original italics.)

As I have explained in separate opinions in previous cases, there are three common circumstances in which a reviewing court may conclude that a jury verdict is "surely unattributable to the error" in misdescribing an element of an offense. These circumstances are: "(1) when the jury has necessarily resolved the omitted factual question under other properly given instructions, (2) when some factual finding the jury has made is the functional equivalent of a finding on the omitted factual question (because no rational jury could find the fact actually found without also finding the omitted fact), and (3) when the defendant admitted or affirmatively conceded the omitted factual question." (*People* v. *Breverman* (1998) 19 Cal.4th 142, 194 [77 Cal.Rptr.2d

870, 960 P.2d 1094] (dis. opn. of Kennard, J.); see also *People* v. *Flood* (1998) 18 Cal.4th 470, 548, 550-554 [76 Cal.Rptr.2d 180, 957 P.2d 869] (dis. opn. of Kennard, J.).)

None of these circumstances is present here. No jury instruction correctly presented to the jury the question whether defendant Johnny Hagen knew, when reporting income on his state income tax returns, that he had a legal duty to include stolen funds that he or his wife had received. The jury did not make any factual finding that may properly be regarded as the functional equivalent of a finding that Hagen was aware of this legal duty. Nor did Hagen admit or affirmatively concede that he was aware of this legal duty at the relevant times.

To justify its harmless error conclusion, the majority first observes, accurately, that the court instructed the jury to find defendant Johnny Hagen guilty of the offense defined in former section 19405(a)(1) only if Hagen, when he signed and submitted the tax returns, "did not believe [the returns] to be true and correct as to every material matter." The majority then reasons, correctly, that in light of this instruction, the jury's guilty verdict necessarily includes a finding that Hagen did not believe the tax returns were true and correct as to every material matter. Finally, the majority asserts, incorrectly, that this implied finding necessarily implies a further finding that Hagen knew of his legal duty to report the embezzlement proceeds. (Maj. opn., *ante*, at pp. 670-671 [stating that "had the jury harbored reasonable doubt as to whether the Hagens knew of their reporting obligation, it would not have found beyond a reasonable doubt that they did not believe their returns to be true and correct as to every material matter"].) Stated another way, the majority apparently bases its conclusion that the instructional error was harmless on the proposition that a finding that Hagen did not believe the tax returns were true and correct as to every material matter is the functional equivalent of a finding that Hagen knew he had a legal duty to report embezzlement proceeds as income on his state tax returns.

That proposition is, as the majority elsewhere acknowledges, false: intentionally signing a tax return while lacking a belief that a tax return is true and correct as to every material matter is *not* functionally equivalent to voluntarily and intentionally violating a known legal duty. The majority correctly explains the relationship this way: "Lack of belief in the return's correctness may not be precisely equivalent to knowledge of its falsity; the prosecutor in a given case might at least argue that a taxpayer who recklessly failed to discover the truth regarding information demanded on a return and who, for that reason, did not know the return to be false, nonetheless did not 'believe [the return] to be true and correct.' [Citation.] *A taxpayer, moreover,*

*might knowingly omit information from a tax return in the mistaken belief that he or she was not required to report that information. Such a taxpayer, arguably, would not believe the return to be entirely 'true and correct.'* " (Maj. opn., *ante*, at p. 665, italics added.) Thus, the majority, to justify its conclusion that the instructional error was harmless, is forced to contradict its own reasoning.[1]

The most that can be said here is that the prosecution presented circumstantial evidence from which a reasonable juror could have inferred that defendant Johnny Hagen knew of his legal duty to include unlawfully obtained funds in his reported income. But this is not enough to establish that the instructional error was harmless. It is not enough because "[i]n the words of Justice Scalia, 'misdescription of an element of the offense . . . deprives the jury of its factfinding role' and thus is 'not curable by overwhelming record evidence of guilt.' (*Carella* v. *California* (1989) 491 U.S. 263, 270 [109 L.Ed.2d 218, 225, 105 S.Ct. 218] (conc. opn. of Scalia, J.))." (*People* v. *Harris* (1994) 9 Cal.4th 407, 457 [37 Cal.Rptr.2d 200, 886 P.2d 1193] (conc. & dis. opn. of Kennard, J.).)

I disagree also with the majority's conclusion that the trial court did not have to instruct the jury on the misdemeanor offense defined in former section 19401(a) as an offense necessarily included within the offense charged (that is, violation of former section 19405(a)(1)) because "[t]he record here contains no substantial evidence of the lesser offense." (Maj. opn., *ante*, at p. 672.) To find defendant Johnny Hagen guilty of the misdemeanor, the jury would have had to find beyond a reasonable doubt

---

[1]In a footnote (maj. opn., *ante*, at p. 671, fn. 10), the majority insists there is no contradiction. The majority claims that "[n]o contradiction exists between the statement that two elements of an offense are, in general, not identical or coextensive, and the statement that on the facts of a particular case the jury could not reasonably find one without finding the other." But the majority never explains, so far as I can determine, what specific evidence in the trial of this case takes it out of the general rule that a finding of one mental element (lack of belief that the return is true and correct) does not compel a finding of the other (voluntary and intentional violation of a known legal duty). Specifically, the majority identifies no evidence that would preclude a reasonable juror from finding both that Johnny Hagen lacked a belief that his federal tax returns were entirely true and correct (because he knew he had not included the illegally obtained funds when listing his income) and that Johnny Hagen did not intentionally violate a known legal duty (because he did not know that he had a legal duty to report illegally obtained funds).

The only evidence the majority mentions in this connection is the testimony of the Hagens' tax preparer, Richard Contreras, that he asked Johnny and Patricia Hagen about "other income" and that they failed to mention the illegally obtained funds. But Johnny Hagen's failure to discuss these funds with a fellow California Highway Patrol officer is readily explainable by an unwillingness to risk criminal prosecution for the misappropriation; it does not necessarily imply knowledge of the legal duty to report the misappropriated funds as income on federal tax returns.

that he underreported income on his tax returns while at the same time entertaining a reasonable doubt that he acted willfully or without believing that the returns were accurate. (*Ibid.*) Unlike the majority, I conclude that a reasonable juror could make these findings on the evidence presented.

In a criminal prosecution for a tax offense containing the element of willfulness, the government has the burden of proving "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." (*Cheek* v. *United States* (1991) 498 U.S. 192, 201 [111 S.Ct. 604, 610, 112 L.Ed.2d 617].) A defendant's knowledge of the duty may be established by direct evidence of the defendant's awareness of relevant tax statutes, regulations, court decisions, administrative rulings, or any contents of the tax return forms and accompanying instructions that state the applicable legal duty. (*Id.* at p. 202 [111 S.Ct. at pp. 610-611].) Alternatively, or additionally, the required knowledge may be established by circumstantial evidence, including evidence of a defendant's "general educational background and expertise" (*U.S.* v. *Fletcher* (2d Cir. 1991) 928 F.2d 495, 501) and evidence that a defendant "deliberately closed his eyes to what would otherwise have been obvious to him" (*U.S.* v. *Fingado* (10th Cir. 1991) 934 F.2d 1163, 1166). Thus, if a defendant claims to have been innocently mistaken about a tax reporting duty, the prosecution may refute the claim with evidence that the defendant "was aware of a high probability that his understanding of the tax laws was erroneous and consciously avoided obtaining actual knowledge of his obligations." (*Ibid.*)

The record here contains no direct evidence that defendant Johnny Hagen was aware of tax statutes, regulations, court decisions, administrative rulings, or tax form instructions stating that illegally obtained funds were reportable as income for tax purposes. The evidence on this issue was entirely circumstantial. Hagen had been employed by the California Highway Patrol for over 20 years, but there was no evidence that his duties ever included investigation of tax offenses or that he had ever received any training in that area. On the contrary, it appears that he served as a patrol officer, not an investigator.

The record shows that the tax returns that formed the basis of Johnny Hagen's convictions were prepared by a fellow California Highway Patrol officer, Richard Contreras, based upon documents and information that Hagen and his wife supplied to Contreras during an interview. There is no evidence that Contreras explained to them during the interview that illegally obtained funds were reportable income or that he explained the concept of reportable income in a way that would necessarily have included such funds.

Contreras testified he asked Hagen and his wife to tell him "all the income that they received from various jobs or interest or dividends, other income, business income." He could not remember the exact words he used. He usually asked his clients to tell him about "all income" or "any other income," but he may have inquired about wages and "whatever other income outside of that that was *earned* in that particular year." (Italics added.) They did not, of course, tell him they had received and spent funds Hagen's wife had embezzled from her employer.

As a result of some highly publicized prosecutions, the requirement that illegally obtained funds be reported as income for tax purposes is widely known. (Cf. Bucy, *Criminal Tax Fraud: The Downfall of Murderers, Madams and Thieves* (1997) 29 Ariz. St. L.J. 639.) But this knowledge is not universal, and I do not consider it beyond the realm of reasonable possibility that a California Highway Patrol officer who performed only patrol duties would be unaware of this duty. Likewise, defendant Johnny Hagen's failure to discuss the question with a fellow officer who prepared his taxes may suggest, but does not conclusively demonstrate, that he was either aware of the duty to report embezzled funds or aware of a high probability that the embezzled funds were reportable income and consciously avoided obtaining actual knowledge of his obligation. It is reasonably possible that Hagen construed his fellow officer's statements as meaning that reportable income included only certain gifts and funds that were lawfully earned, and not funds obtained unlawfully.

Considering all of the relevant circumstantial evidence, a reasonable juror could have inferred that defendant Johnny Hagen knew he had a legal obligation to report all income, including theft proceeds, but the circumstantial evidence was not so strong or overwhelming as to make this inference inescapable or to preclude a reasonable juror from rejecting the inference and giving Hagen the benefit of a reasonable doubt. Thus, the state of the evidence at trial was such that a reasonable juror could have found Hagen guilty of the lesser but not the greater offense. This being so, the trial court through its instructions should have given the jury the option of convicting Hagen on the lesser offense.[2]

---

[2]In a footnote (maj. opn., *ante*, at p. 673, fn. 11), the majority states that it "would have been pure speculation" for a jury to conclude that Johnny Hagen "knew about the money but believed he was not required to report it because it was illegally obtained." This conclusion would require speculation, according to the majority, because of "the lack of any evidence suggesting Johnny failed to report the stolen funds because of ignorance or mistake as to the tax law." (*Ibid.*) The main flaw in the majority's reasoning is its assumption that Johnny Hagen had the burden of coming forward with affirmative evidence of his own ignorance of the relevant legal duty. Because knowledge of the legal duty was an element of the offense,

## II

In this case, the jury that found defendant Johnny Hagen guilty of violating section 19405(a)(1) was never asked to determine whether Hagen voluntarily and intentionally violated a known legal duty when he executed the false tax returns. Although the evidence at trial was sufficient to permit a reasonable juror to infer that he did, the federal Constitution, as authoritatively construed by the United States Supreme Court, does not permit a reviewing court to substitute its assessment of the strength of the evidence for a missing jury determination on an ultimate fact necessary for a criminal conviction. Accordingly, I would reverse the judgment of the Court of Appeal and remand the matter to that court with directions to reverse Hagen's convictions so that his guilt or innocence of the charged offense might be determined by a properly instructed jury. In the alternative, if the prosecution so elected, Hagen's convictions should be reduced to the necessarily included misdemeanor offense defined in former section 19401(a). (See Pen. Code, § 1260; *In re Brown* (1998) 17 Cal.4th 873, 891-892 [72 Cal.Rptr.2d 698, 952 P.2d 715].)

The petitions of both respondent and appellants for a rehearing were denied January 20, 1999. Kennard, J., was of the opinion that the petition of appellants should be granted.

---

it was the prosecution's burden to prove Johnny had that knowledge. Thus, to obtain a favorable verdict Johnny did not need to persuade the jury that he entertained the mistaken belief; he needed only to raise a reasonable doubt in the jurors' minds that he had the required knowledge of the legal duty to report illegally obtained funds as income on federal tax returns. Given the inconclusive state of the prosecution's evidence on this issue, a reasonable and properly instructed juror might have entertained such a reasonable doubt.